Juan Vázquez Suárez, peticionario, *v.* Félix R. Rivera, Jefe de la Penitenciaría Insular, recurrido.

Núm. 449.—*Sometido:* Junio 15, 1949. *Resuelto:* Julio 5, 1949.

*Benjamín Rodríguez Ramón, Santos P. Amadeo, L. Marrero Ledesma,*
*A. Alvarez Linares* y *Nellie Ortiz Torres,* abogados del peticio-
nario; *Hon. Procurador General Vicente Géigel Polanco (José*
*Trías Monge, Procurador General Interino,* en el alegato) y *J.*
*Rivera Barreras, Fiscal del Tribunal Supremo,* abogados del re-
currido.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tri-
bunal.

En 1946, después que un jurado declaró a Juan Vázquez
Suárez culpable del delito de homicidio voluntario, la corte de
distrito le impuso una sentencia de presidio de ocho años
como mínimo a diez años como máximo, de conformidad con
la Ley núm. 295, Leyes de Puerto Rico, 1946 ((1) pág. 759).[1]

[1]La sección 1 de la Ley núm. 295 prescribe así: "Por la presente se
establece la sentencia indeterminada en Puerto Rico; *Disponiéndose,* que, cuando
los tribunales condenaren a un reo a cumplir sentencia por delito grave, que

Toda vez que la ley fué aprobada luego de cometido el delito en 1945, expedimos un auto de hábeas corpus a solicitud de Vázquez para determinar si esta sentencia infringió la cláusula de la Ley Orgánica sobre leyes *ex post facto,* 48 U.S.C. sec. 737.

En los comienzos del caso nos confrontamos con dos alegaciones del jefe de la penitenciaría: (1) la sentencia no es nula y por tanto los supuestos defectos de la misma debieron haberse levantado en apelación y no mediante ataque colateral por hábeas corpus; (2) de cualquier manera, una solicitud de hábeas corpus es prematura cuando, como ocurre aquí, el prisionero no ha cumplido aquella parte de su sentencia que es legal. Pero una sentencia que de su faz infringe la cláusula de *ex post facto* es nula, no meramente irregular, y puede en consecuencia ser atacada en hábeas corpus. Si es nula, no hay "parte legal" de la misma, si bien la corte de distrito puede luego dictar otra sentencia que sea legal. Véanse *Lindsay* v. *Washington,* 301 U.S. 397; *Gryger* v. *Burke,* 334 U.S. 728. *Cf. Ex parte Lee,* 171 Pac. 958 (Calif., 1918). *Ex parte Texidor,* 8 D.P.R. 534, es distinguible por sus hechos.

En los méritos, el peticionario sostiene primeramente que la sección 1 de la Ley núm. 295 no otorga discreción alguna a la corte de distrito. Su teoría es que la corte

no aparejo pena de reclusión perpetua, fijarán una sentencia indeterminada y no fijarán límite específico de duración a la sentencia, sino que ordenarán la reclusión del reo por un término que no podrá ser en ningún caso menor que el término mínimo provisto en la ley para el delito cometido ni mayor que el término máximo que se señala para dicho delito; *Disponiéndose, además,* que en aquellos casos en que la ley no disponga término mínimo o máximo, el tribunal sentenciador fijará dicho término mínimo o máximo."

La sección 2 provee en parte como sigue: "Una vez que el reo haya cumplido el término mínimo fijado por el tribunal sentenciador para el delito cometido quedará bajo la jurisdicción de la Junta de Libertad Bajo Palabra, la cual podrá ponerlo en libertad bajo palabra, cuando tenga la razonable convicción de que en él se ha iniciado el cambio moral favorable que se desea y, una vez que esté en libertad bajo palabra, continuará bajo su jurisdicción y supervisión hasta la expiración del término máximo que fijado por el tribunal sentenciador para dicho delito . . . ".

·inferior debe imponer una sentencia indeterminada con la pena mínima y la máxima provistas en la ley. Y alega que ·toda vez que el artículo 204 del Código Penal, ed. de 1937, ·establece un máximo de 10 años para homicidio voluntario pero no establece ningún mínimo, la corte de distrito venía obligada a fijar un máximo de diez años y el mínimo más bajo posible compatible con los fines de la Ley núm. 295. Este mínimo más bajo posible, según el peticionario, debía haber sido un término considerablemente menor que ocho años. Su punto en cuanto al mínimo es que no puede fijarse tan alto que en efecto práctico resulte en un término fijo y prive de jurisdicción a la Junta de Libertad Bajo Palabra.

No estamos conformes con el peticionario en que la sección 1 de la Ley núm. 295 no concede discreción a la corte inferior y obliga a ésta a sentenciar automáticamente a los acusados a cumplir el máximo y el mínimo, si alguno, provisto por el Código Penal. Por el contrario, el lenguaje empleado por la Legislatura confiere autorización al juez sentenciador para fijar el mínimo y el máximo de una sentencia indeterminada siempre que permanezca dentro del mínimo, de haberlo, y máximo fijados por la ley. Ya hemos indicado que así interpretamos el estatuto. *Pueblo* v. *Rodríguez,* 69 D.P.R. 546, 550–51. Y véanse *State* v. *Superior Court in and for Walla Walla County,* 13 P.2d 1086 (Wash., 1932); *People* v. *Tyson,* 65 N.E.2d 796 (Ill., 1946); *People* v. *Reid,* 72 N.E.2d 812 (Ill., 1947).

Un número de estados ha aprobado leyes que privan a las cortes sentenciadoras de toda discreción al imponer sentencias cuando el Código Penal fija un máximo y un mínimo. Pero trece estados tienen estatutos como el nuestro confiriendo discreción a dichas cortes para imponer sentencias indeterminadas dentro del máximo y el mínimo fijados por la ley. 50 Harv.L.Rev. 677, 681; Orfield, *Criminal Procedure from Arrest to Appeal,* pág. 560. Convenimos con el peticionario en que el propósito de la Legislatura al proveer las

sentencias indeterminadas puede ser burlado por los jueces sentenciadores que fijan el término mínimo un poco más bajo que el máximo. Orfield, supra, pág. 560. *Cf. Williams* v. *New York,* 337 U.S. 241, resuelto el 6 de junio de 1949. Pero no podemos revisar nuestra ley para ajustarla a una política que la Legislatura no ha adoptado. Ésta está en libertad de quitarle a las cortes de distrito toda discreción al imponer sentencias indeterminadas; pero hasta que así lo haga, debemos poner en vigor el estatuto tal cual rige hoy día.

■ Pasemos al problema fundamental en este caso— infringió la cláusula *ex post facto* la sentencia indeterminada de 8 a 10 años impuesta a tenor con la sección 1 de la Ley núm. 295, que fué aprobada después de haberse cometido el delito?

Una ley que hace más onerosa la norma de castigo es *ex post facto* al aplicársele a un acusado que es convicto después de aprobada por un crimen cometido antes de su aprobación. *Lindsey* v. *Washington,* supra. *Cf. Ex parte Castro,* 69 D.P.R. 988. Y "la cláusula *ex post facto* se dirige hacia la norma del castigo prescrito por la ley, más bien que a la sentencia de hecho impuesta." *Lindsey* v. *Washington,* supra, pág. 401.

■ Cuando una ley de término fijo es sustituída por un estatuto de sentencia indeterminada, la cláusula de *ex post facto* puede o no impedir la aplicación de la ley a delitos cometidos antes de la aprobación de la última. Como en otras ocasiones, la norma es si un castigo más oneroso puede imponerse bajo el lenguaje del estatuto específico. 2 Sutherland, *Statutory Construction,* sec. 2309, págs. 171–2, y casos citados; Rottschaefer *on Constitutional Law,* págs. 773–74, y casos citados. *Cf. State* v. *Tyree,* 77 Pac. 290 (Kans., 1904); *State* v. *Fisher,* 27 S.E.2d 581 (W.Va., 1943).

■ La Ley núm. 295 no permite una sentencia más rígida como tal. En el presente caso, antes de la aprobación de

la Ley núm. 295, la corte de distrito pudo haber impuesto cualquier sentencia que quisiera que no excediera de diez años, a tenor con los artículos 28 y 204 del Código Penal. Si hubiéramos convenido con la contención del peticionario de que el máximo tenía que ser el máximo fijado por la ley, habría considerable fuerza en su argumento de que la aplicación a él de tal estatuto haría el castigo más oneroso y con ello infringiría la cláusula de *ex post facto*. Esto es así porque anteriormente el máximo era opcional, mientras que ahora sería mandatorio. *Lindsey* v. *Washington,* supra; *Ex parte Melosevich,* 133 Pac. 57 (Nev., 1913); *Application of Nasti,* 9 N.Y.S.2d 327 (N.Y., 1939). Pero como hemos visto, bajo la Ley núm. 295 la amplia discreción conferida a la corte de distrito a tenor con el artículo 204 del Código Penal para fijar la sentencia máxima ha permanecido inalterada. El castigo que podría fijarse bajo la Ley núm. 295 por consiguiente no podría ser más oneroso que bajo la ley anterior. Es cierto que, luego de aprobarse la Ley núm. 295, la corte de distrito venía obligada a imponer tanto el mínimo como el máximo. Pero en ausencia de un requisito de que era mandatoria la imposición del máximo fijado en la ley, el requisito adicional de que un mínimo deberá también fijarse por la corte de distrito no podría resultar en un castigo más oneroso que aquél provisto por la ley anterior. *Commonwealth* v. *Kalck,* 87 Atl. 61 (Pa., 1913).

█ Si el peticionario observa buena conducta mientras esté en prisión, se le abonarán diez días por cada mes al período máximo de su sentencia y tendrá derecho a salir al cabo de haber estado en prisión seis años y ocho meses. Artículo 1, Ley núm. 180, Leyes de Puerto Rico, 1943; *Echeandía* v. *Saldaña,* 61 D.P.R. 799; *Echeandía* v. *Alvarado,* 64 D.P.R. 547; *Orme* v. *Rogers,* 260 Pac. 199 (Ariz., 1927); *Ex parte Lee,* supra, pág. 959; *Story* v. *Rives,* 97 F.2d 182, 187 (C.C.A., D.C., 1938). La solicitud indica que bajo dichas circunstancias nunca vendrá a ser elegible para salir bajo

palabra, en vista del requisito de la sección 2 de la Ley núm. 295 al efecto de que un preso debe cumplir el término mínimo fijado en la sentencia antes de que sea elegible para salir bajo palabra. Pero esto se debe no a algún defecto en la sentencia sino a dos circunstancias: (1) la buena conducta futura del peticionario; (2) la pequeña pero válida diferencia entre el mínimo y el máximo de la sentencia impuesta por la corte inferior. No podemos ver cómo estos hechos nos obliguen a resolver que la Ley núm. 295 es una *ex post facto* a serle aplicada al peticionario. *Clark* v. *State,* 204 Pac. 1032 (Ariz., 1922). Por igual motivo, no podemos resolver que la sentencia es nula por el fundamento de que en efecto práctico ésta es una sentencia por un término fijo de seis años ocho meses y no una sentencia indeterminada, siempre y cuándo que el peticionario observe buena conducta.

Quizá sea aconsejable que la Junta de Libertad Bajo Palabra tenga jurisdicción para actuar en cada caso. Pero mientras la Legislatura permita a las cortes sentenciadoras fijar una diferencia pequeña entre el mínimo y el máximo al imponer sentencias indeterminadas y continúe en efecto el sistema de bonificaciones por buena conducta, casos como el presente están llamados a ocurrir. El remedio, de necesitarse alguno, está en dictar las cortes sentencias más adecuadas o en legislación, pero no en procedimientos de hábeas corpus basados en la cláusula de *ex post facto*.

El único problema que queda por resolver es la contención del peticionario al efecto de que bajo la sección 6-C de la Ley del 14 de marzo de 1907, según fué enmendada por la Ley núm. 180, Leyes de Puerto Rico, 1943, él tenía el derecho de solicitar de la Junta su libertad bajo palabra luego de cumplir una cuarta parte de su sentencia, mientras que bajo la sección 2 de la Ley núm. 295, Leyes de Puerto Rico, 1946, viene obligado a cumplir el término mínimo de la sentencia antes de que sea elegible para salir bajo palabra. Sin embargo, esta contención no es un ataque

a la validez de la sentencia propiamente dicha. Por tanto no puede ser levantada en hábeas corpus. Además, esta contención es prematura. El peticionario empezó a cumplir su sentencia el 16 de marzo de 1948. Cuando cumpla una cuarta parte de su término, si la Junta de Libertad Bajo Palabra se niega a considerarle elegible para salir bajo palabra, el peticionario tendrá derecho a levantar la cuestión de que la sección 2 de la Ley núm. 295 es ley *ex post facto* en tanto en cuanto se le aplica a él, porque le priva del privilegio bajo la ley anterior de solicitar su libertad bajo palabra luego de cumplir una cuarta parte de su sentencia. Pero esa contención no puede levantarse hasta que el peticionario haya de hecho cumplido una cuarta parte de su término máximo. No podemos basar nuestras decisiones en posibles eventualidades. *Echeandía* v. *Saldaña,* supra, pág. 804.

En vista de que el peticionario descansa en la Ley núm. 176, Leyes de Puerto Rico, 1949, que enmendó la Ley núm. 295 de 1946, la hemos examinado, pero encontramos que la misma nada tiene que ver con este caso.

*El auto de hábeas corpus será anulado.*