Luciano Fernández Ortega, peticionario, *v.* Félix R. Rivera, Jefe del Presidio Insular, recurrido.

Núm. 450.—*Sometido:* Febrero 2, 1950. *Resuelto:* Febrero 15, 1950.

*Santos P. Amadeo, Sigfredo Vélez González, Enrique Belén Trujillo y Ángel Cruz Cruz*, abogados del peticionario; *Hon. Procurador General Vicente Géigel Polanco, J. Rivera Barreras, Fiscal del Tribunal Supremo* y *Fernando Fornaris, Jr., Fiscal Auxiliar*, abogados del recurrido.

El JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

El peticionario Luciano Fernández Ortega fué acusado en 15 de octubre de 1947 ante la Corte de Distrito de Arecibo del delito de asesinato en primer grado. Al ser llamado su caso para juicio en 18 de febrero del siguiente año, se declaró culpable de asesinato en segundo grado y solicitó de la corte le suspendiera la sentencia a tenor de lo provisto por el artículo 2 de la Ley núm. 259 de 3 de abril de 1946 ((1) pág. 537). De conformidad con lo solicitado, la corte ordenó al oficial probatorio que practicara la investigación de rigor. No fué, sin embargo, hasta el 11 de abril de 1949 que el oficial probatorio rindió su informe en el caso, negándose la corte inferior en 26 de mayo de 1949 a concederle los beneficios de la indicada ley y sentenciándole a sufrir la pena de diez a quince años de presidio con trabajos forzados. Al dictar su sentencia la corte se expresó así:

". . . En este caso el acusado se declaró culpable de asesinato en segundo grado el 18 de febrero del 1947, estando asistido de abogado y en corte abierta. El mismo día, a solicitud del acusado, la Corte ordenó que el caso pasara al Oficial Probatorio para investigación. El Oficial Probatorio rindió su informe el 11 de abril de 1949, el actual Oficial Probatorio, y lo recibió el Juez el 18 de abril del 1949. Dieciséis días después de recibido el informe, el Juez lo ha estudiado

para resolver, y fué aprobada la Ley 177 del 4 de mayo del 1949, que enmendó el artículo 2 de la ley 259 del 3 de abril de 1946, ley ésta que rige la concesión de sentencias probatorias, y al enmendarla excluyó el delito de asesinato en segundo grado. De modo que en el mismo no puede concederse sentencia probatoria, siendo ése el delito de que se declaró culpable el acusado. La Corte hace constar que de no haberlo impedido esta enmienda de la ley, hubiera concedido el beneficio de la sentencia probatoria, pero se ve impedida de hacerlo por haber sido enmendada la ley. Ciertamente este acusado ha sido perjudicado por la demora habida. Se ordenó por la Corte el 18 de febrero del 1947 que se practicase investigación del Oficial Probatorio. La Corte estuvo sin Oficial Probatorio durante un largo período y no fué hasta fines de agosto del 1948 cuando el actual Oficial Probatorio vino a trabajar a esta Corte y comenzó sus investigaciones, habiendo encontrado varios casos pendientes. El informe se rindió el 11 de abril del 1949, o sea, más de dos años después. Pero la Corte entiende que la ley es mandatoria y que no puede conceder la sentencia suspendida, que le hubiera concedido si el informe se recibe antes del 4 de mayo. ¿Existe algún impedimento para que se dicte sentencia?

En el recurso de hábeas corpus que está ahora ante nuestra consideración el peticionario alega que la sentencia dictada en su contra y su encarcelamiento son nulos (a) porque cuando cometió el delito y se declaró culpable del mismo, él tenía derecho a que se le suspendiera la sentencia impuéstale, siempre que llenara los requisitos exigidos por la Ley núm. 259; (b) porque él llenaba todos los requisitos fijados por dicha ley; (c) porque la aplicación *ex post facto* de la enmienda de la ley citada a su caso le priva de un derecho reconocídole por la ley anterior; y (d) porque la aplicación ex post facto de la ley posterior viola la Constitución de los Estados Unidos y el artículo 2 de nuestra Carta Orgánica. El fiscal de este Tribunal se ha allanado a la revocación de la sentencia.

■ Dispone el párrafo 8 del artículo 2 de nuestra Carta Orgánica (48 U.S.C., sec. 737) que ''No se aprobará ninguna ley *ex post facto* . . .''. Se hace necesario, en su consecuencia, determinar si la aplicación de la enmienda de 1949 al caso del peticionario resulta contraria al precepto constitucional antes expuesto.

La Corte Suprema de los Estados Unidos en el caso de *Calder* v. *Bull,* 3 Dall, 386, 1 L. Ed. 648, declaró que es ex post facto:

"1. Toda ley que considera criminal y que castiga un acto que al ser realizado era inocente;

"2. Toda ley que agrava un delito o lo hace mayor de lo que lo era al momento de ser cometido;

"3. Toda ley que altera el castigo y que impone una pena mayor que la fijada al delito al momento de ser cometido; y

"4. Toda ley que altera las reglas de evidencia, y que exige menos prueba o prueba distinta a la exigida por la ley al momento de la comisión del delito para castigar al acusado."

Véanse también *Pueblo* v. *López,* ante, pág. 790; *Vázquez* v. *Rivera,* 70 D.P.R. 218; *Ex parte Castro,* 69 D.P.R. 988; *Loíza Sugar Co.* v. *Buscaglia, Tes.,* 63 D.P.R. 616, y Cooley's *Constitutional Limitations,* Vol. 1, 8va. ed., págs. 541 *et seq.*

El principio así enunciado por el caso de *Calder* v. *Bull,* supra, fué ampliado por la propia Corte Suprema de la nación en el de *Thompson* v. *Utah,* 170 U.S. 343, en el cual se dijo a la página 351 que también es ex post facto una ley que "en su relación con el delito o sus consecuencias, altera la situación del acusado en su perjuicio." Véanse asimismo Willoughby *on the Constitution of the United States,* Vol. 2, 2da. ed., pág. 1135, sec. 684; Crawford, *Statutory Construction* (1940), págs. 573 y 574; y *State* v. *Board of Parole,* 99 So. (La.) 534, 536.

■■ Para la época en que el peticionario cometió el delito imputádole el artículo 2 de la Ley 259, supra, proveía en lo esencial que "El efecto de la sentencia que se imponga a toda persona que cometa *cualquier delito grave, que no sea asesinato en primer grado,* deberá ser suspendida y el sentenciado puesto a prueba", (bastardillas nuestras) siempre que, al tiempo de imponer dicha sentencia concurran los requisitos que el propio artículo fija. Sin embargo, por la Ley 177 de 4 de mayo de 1949 (pág. 557) se enmendó el artículo 2 de la indicada ley de 1946 para que leyera en lo pertinente así: "Las cortes de distrito podrán suspender los efectos de

la sentencia que se dicte en todo caso de delito grave que no sea asesinato, robo, incesto, extorsión, violación, crimen contra natura, hurto o escalamiento y ordenarán que la persona sentenciada quede en libertad a prueba siempre que, al tiempo de imponer dicha sentencia, concurran todos los requisitos que a continuación . . .'' enumera la propia ley enmendatoria en su referido artículo.

El presente recurso no envuelve la determinación de si el peticionario cumple o no con los requisitos fijados por la ley original o por la enmendatoria para que la corte de distrito pueda concederle los beneficios otorgados por ellas. Lo que sí éste envuelve es si habiendo el peticionario sido acusado en 15 de octubre de 1947 por un delito de asesinato cometido con anterioridad a dicha fecha, época en que estaba en vigor el artículo 2 de la Ley 259 de 1946 que autorizaba la suspensión de sentencias para cualesquiera delitos graves que no fueran el de asesinato en primer grado, a él le es aplicable la enmienda introducida a ese artículo por la Ley 177 de 1949 que permite la suspensión de los efectos de la sentencia que se dicte en todo caso de delito grave que no sea asesinato, robo, etc., por el hecho de estar ésta última ley en vigor al momento de dictarse la sentencia en su contra.

Mediante el recurso de hábeas corpus puede ponerse a prueba el hecho de si una ley o su aplicación es ex post facto o no. *Vázquez* v. *Rivera,* supra. Como en el presente caso la ley vigente a la fecha de la comisión del delito autorizaba a las cortes a suspender sentencias en casos de asesinato en segundo grado, mas no así la ley enmendatoria de 1949, es incuestionable que esta última ley al ser aplicada al caso del peticionario resulta ex post facto, ya que la misma opera en su detrimento y altera perjudicialmente su situación. Conforme se dijo en *Lindsey* v. *Washington,* 301 U.S. 397, 401, ''la cláusula *ex post facto* se dirige hacia la norma del castigo prescrito por la ley, más bien que a la sentencia de hecho impuesta.'' La aplicación de la ley enmendatoria a un caso como el del peticionario resulta por tanto inconstitucional.

■ Desde luego, la sentencia probatoria es un acto de gracia, mas no un derecho absoluto concedido a la persona convicta de un delito. *Escoe* v. *Zerbst,* 295 U.S. 490, 492; *Pueblo* v. *Emmanuelli,* 67 D.P.R. 667, 675; *Pueblo* v. *Rodríguez,* 69 D.P.R. 546, 551; *Pueblo* v. *Camacho,* 69 D.P.R. 358, 363, y casos en ellos citados. Su concesión cae dentro de la discreción de la corte sentenciadora.

*Debe dejarse sin efecto la sentencia dictada por el tribunal inferior, debiendo proceder éste a dictar aquélla que corresponda luego de tomar en consideración las disposiciones de la Ley 259 de 1946.*