EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SU-
PERIOR DE PUERTO RICO, SALA DE PONCE, HON. JOAQUÍN
CORREA SUÁREZ, JUEZ, demandado.

Número 2095.

*Sometido:* 1 de febrero de 1955. *Resuelto:* 30 de marzo de 1955.

*Hon. Secretario de Justicia José Trías Monge* y *Rafael L. Ydrach
Yordán, Fiscal Interino, Tribunal Supremo,* abogados del pe-
ticionario; *Santos P. Amadeo* y *Aldo Segurola de Diego,*
abogados del demandado.

Opinión emitida por el Juez Asociado Sr. Pérez Pimentel en
la cual concurren los Jueces Presidente Sr. Snyder y
Asociado Sr. Marrero.

El día 3 de mayo de 1948, el antiguo Tribunal de Dis-
trito de Ponce, presidido por el Hon. Juez Joaquín Correa
Suárez, dictó contra el convicto Miguel Ángel Quiñones To-
rres una sentencia indeterminada de 20 a 25 años de pre-
sidio por un delito de asesinato en segundo grado. En 16
de diciembre del mismo año el reo comenzó a extinguir la
indicada sentencia en el Presidio Insular.

El día 11 de marzo de 1952, o sea, más de tres años des-
pués de haber comenzado a extinguir su sentencia, el convicto
Miguel Ángel Quiñones Torres radicó ante el anterior Tri-
bunal de Distrito de Puerto Rico, Sección de Ponce, un es-

crito titulado "Reconsideración de Sentencia". En dicho escrito alegaba, (a) que no había tenido la debida asistencia de abogado en el proceso y (b) que la pena impuéstale era excesiva.

Una vez oídas las partes sobre la susodicha moción de reconsideración, la corte a quo, presidida por el mismo juez, reconsideró su sentencia original y dictó una nueva con fecha de abril 1 de 1954, condenando al convicto a cumplir de 10 a 25 años de presidio. A solicitud del Pueblo, expedimos un auto de *certiorari* para revisar esta actuación de la corte a quo.

■ El peticionario sostiene que la corte recurrida carecía de facultad para reconsiderar su sentencia original una vez había comenzado la ejecución de la misma. Así lo hemos resuelto repetidamente. *Ex parte Zacarías y El Pueblo*, 41 D.P.R. 730; *Pueblo* v. *Carbone*, 59 D.P.R. 610 y *Santiago* v. *Jones*, 74 D.P.R. 617. El demandado no cuestiona esta doctrina. Su contención es sin embargo, que la sentencia original de 20 a 25 años de presidio es nula (1) porque al fijar dicha sentencia un mínimo mayor que el mínimo establecido por el Código Penal de Puerto Rico para el delito de asesinato en segundo grado, invadió la jurisdicción de la Junta de Libertad Bajo Palabra usurpando así el juez sentenciador los poderes que la sec. 2 de la Ley núm. 295 de 1946 ((1) pág. 759) confirió a dicha Junta; (2) porque una sentencia indeterminada de 20 a 25 años de presidio se convierte en una pena de 15 años de presidio, que es de hecho y de derecho, una sentencia fija, de acuerdo con la Ley núm. 180 de 1943 (pág. 653), estableciendo rebajas de las sentencias a los confinados en las instituciones penales de Puerto Rico, todo ello en violación del art. 1 de la Ley núm. 295 de 1946, que prohibe a los tribunales fijar límites específicos de duración a las sentencias, y (3) porque una sentencia indeterminada de 20 a 25 años de presidio infringe la política penal establecida en Puerto Rico por la Ley núm. 295 de 1946.

■■ El primer fundamento aducido por el recurrido para sostener la nulidad de la sentencia original, fué expresamente desestimado por este Tribunal en *Vázquez* v. *Rivera*, 70 D.P.R. 218. Interpretando la sec. 1 de la Ley núm. 295 de 1946, rechazamos en dicho caso la contención del allí peticionario al efecto de que la indicada sec. 1 no concede discreción a la corte inferior y obliga a ésta a sentenciar automáticamente a los acusados a cumplir el máximo y el mínimo, si alguno, provisto por el Código Penal. Dijimos que por el contrario, "el lenguaje empleado por la Legislatura confiere autorización al Juez sentenciador para fijar el mínimo y el máximo de una sentencia indeterminada siempre que permanezca dentro del mínimo, de haberlo, y máximo fijados por la ley". Así habíamos ya interpretado el estatuto en *Pueblo* v. *Rodríguez*, 69 D.P.R. 546.

Nos ratificamos en la interpretación que hemos dado al estatuto. Su letra es clara. Al disponer el legislador que "cuando los tribunales condenaren a un reo a cumplir sentencia por delito grave...ordenarán la reclusión del reo por un término que no podrá ser en ningún caso menor que el término mínimo provisto en la ley para el delito cometido ni mayor que el término máximo que se señala para dicho delito:..." confirió discreción a dichos tribunales para imponer sentencias indeterminadas dentro del máximo y el mínimo fijados por la ley. La Ley núm. 295, prohibe al juez sentenciador imponer un mínimo menor que el mínimo fijado por la ley o un máximo mayor que el máximo fijado también por ley pero no le prohibe fijar un mínimo mayor o un máximo menor que el que fija la ley. De ahí surge la discreción del juez sentenciador para fijar un mínimo y un máximo siempre que éstos estén dentro de los límites fijados por la ley. Este criterio encuentra amplio apoyo en la Exposición de Motivos que se adicionó a la Ley núm. 295 por la Ley núm. 176 de 4 de mayo de 1949 ((1) pág. 553), y en la cual el legislador manifestó: "Para facilitar este propósito se establece en Puerto Rico la sentencia indeterminada, que al per-

mitir que se impongan sentencias con un margen de fluctuación razonable entre el mínimo más bajo posible y el máximo más alto que se pueda imponer, permitirán distinguir entre los distintos delincuentes durante la etapa de su reclusión en el penal..."

La afirmación del recurrido en el sentido de que una sentencia indeterminada de 20 a 25 años de presidio, es de hecho y de derecho, una sentencia fija, de acuerdo con la Ley núm. 180 de 1943, descansa en una premisa errónea. Su razonamiento, según lo entendemos, es como sigue: La Ley núm. 180 de 1943, ([1]) concede al reo que observare buena conducta y asiduidad, rebajas del término de su sentencia, las cuales se computarán desde su admisión a la penitenciaría; como por una sentencia de no menos de 20 años y menos de treinta años, la rebaja es de 12 días en cada mes; una vez liquidada una sentencia cuyo máximo es de 25 años, la misma se convierte en una sentencia de 15 años; que como cuestión de hecho la corte lo que le impuso al reo fué una sentencia fija que quedaría extinguida antes de que el recluso cumpliera el mínimo de 20 años. Luego concluye que esto es así porque la Junta de Libertad Condicional no adquiere jurisdicción sobre el recluso hasta que éste cumpla el mínimo de la sentencia que le impuso la corte sentenciadora según lo dispone el art. 2 de la Ley núm. 295 de 1946.

La falla de este argumento consiste en que el recurrido parte de la base de que el recluso debe extinguir el término

---

([1]) La sec. 1 de la Ley núm. 180 de 1943—Leyes de Puerto Rico de 1943, pág. 653—dispone lo siguiente:

"Sección 1.—A partir del primero de abril de 1907, todo preso sentenciado o que en adelante se sentenciare, a prisión en la Penitenciaría o a prisión con trabajo en las cárceles de distrito de Puerto Rico, que observare buena conducta y asiduidad, tendrá derecho a las siguientes rebajas del término de su sentencia, las cuales se computarán desde su admisión a la cárcel o penitenciaría, siempre que ingresare con posterioridad al primero de abril de 1907.

"(1)   .   .   .   .   . .   .   .   .
"(2)   .   .   .   .   .   .   .   .
"(3)   .   .   .   .   .   .   .   .
"(4)   .   .   .   .   .   .   .   .
"(5)   .   .   .   .   .   .   .   .
"(6)   .   .   .   .   .   .   .   .
"(7) Por una sentencia de no menos de veinte años y menos de treinta años; 12 días en cada mes;"

mínimo de 20 años, sin rebaja alguna. Está equivocado. Al computarse las rebajas del término de la sentencia, a razón de 12 días en cada mes, según lo dispone la Ley núm. 180, el término mínimo de 20 años se convierte en uno de 12 años. Al cumplir estos doce años, es que la Junta de Libertad Condicional adquiere jurisdicción sobre el confinado. Sec. 2 de la Ley núm. 295 de 1946, interpretada conjuntamente con la sec. 1 de la Ley núm. 180 de 1943. (²) Como el término máximo de la sentencia después de computados los abonos correspondientes, es de 15 años, resulta obvio que entre uno y otro término media un período de tres años. La sentencia por tanto, no es fija, según alega el recurrido.

Es cierto que al resolver el caso de *Vázquez* v. *Rivera,* supra, donde sostuvimos la validez de una sentencia indeterminada de ocho a diez años de presidio por un delito de homicidio voluntario, no hicimos referencia a la Exposición de Motivos de la Ley núm. 176 de 1949. (³) Creemos, sin embargo, que la política penal expresada por el legislador en dicha Exposición de Motivos no cambia nuestro criterio fundamental respecto a la interpretación de la Ley de Sentencias Indeterminadas en lo que concierne a la facultad de los jueces sentenciadores para imponer un mínimo mayor que el mínimo provisto por ley o un máximo menor que el fijado por el estatuto para el delito cometido.

(²) Cualquier intimación en contrario hecha en el caso de *Vázquez* v. *Rivera,* supra, queda revocada.

(³) La Exposición de Motivos adicionada a la Ley de Sentencias Indeterminadas por la Ley núm. 176 de 1949, reza así:

Exposición de Motivos

"Para que la pena sirva su función eminentemente social de proteger a la sociedad contra el peligro del delincuente, resulta absolutamente indispensable que las Cortes dicten sentencias que permitan a las autoridades penales dos cosas: (1) poder descubrir en cada caso en qué consiste el peligro del delincuente y (2) poder disponer del tiempo suficiente para eliminar dicho peligro mediante un tratamiento constructivo. Para ello tiene que haber una relación directa entre la duración de la sentencia que se imponga y el problema del delincuente.

"Para facilitar este propósito se establece en Puerto Rico la sentencia indeterminada, que al permitir que se impongan sentencias con un margen

Es significativo que al adicionarse la susodicha Exposición de Motivos a la Ley de Sentencias Indeterminadas de 1946, no se enmendó el art. 1 de esta Ley, que es el que faculta a los Jueces para imponer sentencias indeterminadas por períodos que fluctúen entre el mínimo, cuando lo hay, y el máximo provisto por ley. Sin embargo, llamamos la atención al Tribunal Superior sobre la política penal definida por nuestra Legislatura en la Ley núm. 176 de 1949. Es deseable que tal política penal encuentre expresión de realidad en las sentencias indeterminadas que dicho tribunal imponga. Para ello es necesario que "se impongan sentencias con un margen de fluctuación razonable entre el mínimo más bajo posible y el máximo más alto que se pueda imponer." De lo contrario podrá surgir en el futuro el problema de si es o no nula, porque viole el principio de la indeterminación, una sentencia con un mínimo tan alto o un máximo tan bajo, que de hecho la convierta en una sentencia fija, por falta de un margen razonable de fluctuación entre uno y otro término. Consideramos que ese no es el problema en este caso y por lo tanto, nos concretamos a resolver que la sentencia original dictada por el Juez recurrido contra Miguel Ángel Quiñones Torres no es nula.

*En su consecuencia se anulará la sentencia dictada en reconsideración por el Juez recurrido en 1ro. de abril de 1954 y quedará en toda su fuerza y vigor la sentencia original.*

de fluctuación razonable entre el mínimo más bajo posible y el máximo más alto que se pueda imponer, permitirán distinguir entre los distintos delincuentes durante la etapa de su reclusión en el penal y, en su consecuencia, éstos podrán ir recobrando su libertad según vayan evidenciando una reacción favorable al proceso de su rehabilitación. En esta forma evitamos, en interés de un mejor servicio a la comunidad, que el delincuente que se ha reformado sea retenido en el penal por más tiempo del necesario e igualmente, pero a la inversa, se evitará que un delincuente salga del penal siendo aún un peligro para la comunidad.

"La Sociedad debe disponer del tiempo necesario para controlar la conducta del delincuente mientras éste necesita de ese control para corregirse. Esto sólo puede lograrse con una sentencia que permita aplicar las soluciones convenientes a los distintos casos que surjan. Para ello se establece la sentencia indeterminada."

EL JUEZ ASOCIADO SR. BELAVAL concurre en el resultado.

Opinión disidente del Juez Asociado Sr. Negrón Fernández en la cual concurre el Juez Asociado Sr. Sifre.

La política pública expresada por la Asamblea Legislativa en la Ley núm. 295 de 10 de abril de 1946, según quedó enmendada por la núm. 176 de 4 de mayo de 1949 tiene por base normas sancionadas por la penología moderna y va dirigida, a través de la individualización de la pena por métodos de tratamiento individual, a lograr la reforma del delincuente con miras a devolverlo al grupo social en condiciones que le permitan convivir en su seno sin ulteriores manifestaciones de desajuste. La sentencia indeterminada, para que sea eficaz en el propósito indicado, debe dictarse con un margen de fluctuación *razonable* entre el mínimo y el máximo.

El margen de fluctuación que el legislador ha dejado a discreción de los tribunales fijar entre el mínimo y el máximo—dentro de los términos que para cada delito fijen las leyes penales—no puede ser tan exiguo que de hecho excluya la intervención del organismo al cual el legislador encomendó la administracion y ejecución de esa parte de la reforma penal, puesta en vigor a través de la Ley de Sentencias Indeterminadas y de la Ley creando la Junta de Libertad Bajo Palabra. Imponer un mínimo tan alto, que, conforme al propio estatuto, impida que la Junta de Libertad Bajo Palabra pueda asumir jurisdicción sobre el delincuente para realizar la parte de la función rehabilitadora que se le ha asignado, ciertamente frustra el objetivo de la ley.

Los jueces tienen discreción para imponer el mínimo y el máximo, siempre que estén dentro del mínimo y del máximo de la pena fijada en las leyes penales, pero dicha discreción no puede ejercitarse contrariamente al propósito legislativo. Una sentencia indeterminada que no siga las normas del estatuto sobre la razonabilidad de la fluctuación entre el mínimo y el máximo que se impongan—como la sentencia original impuesta en el caso de autos: de 20 a 25 años—frustra

el objetivo de la ley y es, a mi juicio, nula, o, por lo menos, anulable; y no empece el hecho de que haya comenzado su ejecución, puede ser dejada sin efecto como lo hizo aquí el Juez recurrido, y en su lugar dictarse otra siguiendo las normas estatutarias, como también lo hizo dicho Juez al imponer una nueva pena de 10 a 25 años.

En el caso de *Vázquez* v. *Rivera*, 70 D.P.R. 218 expresamos que "el propósito de la Legislatura al proveer las sentencias indeterminadas puede ser burlado por los jueces sentenciadores que fijan el término mínimo un poco más bajo que el máximo," pero que "no podemos revisar nuestra ley para ajustarla a una política que la Legislatura no ha adoptado." Creo que ese *dictum* era, dentro de la controversia legal allí planteada, innecesario y, desde luego, equivocado. La Asamblea Legislativa expresó claramente su política en la Exposición de Motivos contenida en la enmienda de la Ley núm. 176 aprobada el 4 de mayo de 1949 y determinó la norma que debía regir la imposición de la pena, para que se cumpliera su objetivo. No creo que sea válida, sabia o propia, una actuación del poder judicial—en el ejercicio de la función independiente, pero coordinada, que le corresponde como una de las tres ramas que integran el poder del Estado—que derrote, en su propósito y política pública, una actuación válida del poder legislativo, realizada en el ejercicio legítimo de la función pública que en esa integración de poderes también le corresponde. No puede concebirse un resultado tan marcadamente contrario al tan plenamente manifestado propósito de la legislación que nos ocupa.

En mi opinión disidente en *Santiago* v. *Jones*, 74 D.P.R., 617, 627 expuse mi criterio respecto a la función social de que está revestida la justicia criminal cuando, una vez convicto el individuo, se entra en el período de la fijación de la pena. Creo de lugar repetir aquí esos conceptos; páginas 631 y 632:

"A fin de realizar a plenitud la función sociológica de la justicia criminal, en su etapa inicial, según la vislumbran los

más avanzados estudios de la penología moderna, el Juez, al imponer una sentencia, debe ponderar, en una valoración total de aquellos factores que afectan la personalidad del convicto, todos los elementos de juicio que le puedan llevar a determinar el medio más apropiado para su reajuste, bien mediante la suspensión de la ejecución de la sentencia o bien mediante su reclusión institucional por un período mínimo, luego del cual pueda ser puesto en libertad bajo palabra por el organismo administrativo correspondiente, si se opera en él, a través del tratamiento adecuado, el cambio favorable que tal cosa permita. En ese sentido es difícil —casi caprichosa— la labor del Juez, en aquellos casos, como el presente, en que no cuenta con la ayuda de oficiales probatorios que le pongan en condiciones de ejercer su discreción sabiamente. Una revisión de las piezas de legislación pertinentes en forma integrada y coordinada se hace necesaria.

"Como dice la Roe en *Parole with Honor,* a las págs. 185 y 186: '...La triste verdad es que en todo caso el juez necesariamente entra en el campo de las conjeturas cuando impone una sentencia. Es absolutamente imposible para él predecir cómo el convicto responderá al cuidado institucional, o cuál habrá de ser su estado de salud, o hasta qué extremo podrá mejorar su estado mental, o si su actitud va a mejorar o a empeorar bajo supervisión. Al sentenciar a personas convictas de delitos nuestros jueces se ven obligados a jugar con los destinos humanos.' Y a la página 194: 'A todas las circunstancias alrededor de la comisión del delito se les debe dar consideración. Esto lo han tratado de hacer nuestras cortes, pero no han estado en condiciones de penetrar en el futuro para una predicción válida en cuanto al término dentro del cual el convicto podrá ser rehabilitado y puesto en condiciones de regresar a la sociedad que ha ofendido. Con la sustitución de una filosofía de castigo por una filosofía de rehabilitación, es mucho menos importante hacer que la sentencia refleje la gravedad de la falta que el proveer para devolver el convicto a la sociedad cuando esté listo para ser devuelto. Y esa cuestión no puede determinarse al momento de imponer la sentencia.' O, como dice Cantor en *Crime and Society,* pág. 94: 'En ausencia de principios que la gobiernen, la personal predilección e idiosincracia del juez determina la naturaleza de la sentencia'. Véanse también Jerome Hall, *Science and Reform in Criminal Law,* 100 U. of Pa.

152

L. Rev. 787; MacCormick, *The Prisn's Role in Crime Prevention*, 41 J. Crim. L. & Criminology, 42–43; Barnes and Teeters, *New Horizons in Criminology*, página 391 et seq., y página 598 et seq."

Expuesto así mi criterio, sobre la nulidad de la sentencia original aquí impuesta, soy de opinión que el Juez recurrido actuó acertadamente al dejar la misma sin efecto y dictar la nueva sentencia que aquí se impugna.