JORGE ENRIQUE ACOSTA LINARES, peticionario y apelante, *v.* GERARDO DELGADO, ETC., demandado y apelado.

*Número:* O-67-218     *Resuelto:* 28 de junio de 1968

*E. Armstrong de Watlington, Enrique Miranda Merced* y *Julio García Antique,* abogados del apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Peter Ortiz, Procurador General Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Para el 7 de abril de 1967, fecha en que el apelante Jorge Enrique Acosta solicitó el amparo del tribunal de instancia mediante hábeas corpus para cuestionar la legalidad de la sentencia de 10 a 13 años de presidio impuéstale por el delito de fuga subsiguiente, se encontraba cumpliendo además sen-

tencias consecutivas previamente dictadas según se indica a continuación: [1]

(a) escalamiento en primer grado, cuatro sentencias de 2 a 5 años de fecha 3 de septiembre de 1963; [2]

(b) tentativa de escalamiento en primer grado, 1 a 3 años de presidio, de fecha 4 de octubre de 1963;

(c) tentativa de fuga, dos meses de cárcel, de fecha 17 de febrero de 1964.

De lo expuesto se deduce que (a) el apelante estaba recluido en virtud de sentencias cuya validez no se impugna, pero (b) de ser nula la sentencia de 10 a 13 años que se ataca, existe la posibilidad de que la Junta de Libertad bajo Palabra pueda asumir jurisdicción en su caso. [3]

1—Debemos considerar previamente la cuestión relativa a la prematuridad del recurso. [4]

---

[1] De un examen de los autos originales no aparece que se radicara contestación (*return*) a la petición de hábeas corpus. La información sobre las sentencias que cumplía el apelante ha sido tomada de la acusación por el delito de fuga subsiguiente.

[2] Presumiendo que no se le hubiese abonado prisión preventiva alguna al cumplimiento de las sentencias, en 7 de abril de 1967 no había extinguido el término máximo de la primera sentencia de 2 a 5 años de presidio. A dicha fecha había estado recluido por espacio de 3 años 7 meses 4 días; acreditándole la bonificación que correspondía según la Sec. 1 de la Ley de 14 de marzo de 1907, 4 L.P.R.A. sec. 633, que entonces regía, ésta se reducía a 3 años 8 meses.

La situación en la actualidad ha variado no sólo por el tiempo adicional transcurrido, sino por la posibilidad de que proceda acreditarle una bonificación mayor, conforme a lo dispuesto por la Ley Núm. 72 de 26 de mayo de 1967, 4 L.P.R.A. secs. 636a–636e. Pero de todas formas no ha cumplido totalmente las sentencias.

[3] Cuando una persona ha sido sentenciada a más de una sentencia indeterminada, sean éstas para cumplirse concurrente o consecutivamente, la Junta de Libertad bajo Palabra adquiere jurisdicción al cumplirse el período de prisión igual al mínimo más largo. Art. 2 de la Ley Núm. 295 de 10 de abril de 1946, según enmendado, 34 L.P.R.A. sec. 1025; *Lebrón Pérez v. Alcaide, Cárcel de Distrito*, 91 D.P.R. 567 (1964); *Gutiérrez Castro v. Delgado*, 86 D.P.R. 327 (1962).

[4] El fiscal de distrito llamó la atención del juez a quo sobre el particular al descubrir en el curso del contrainterrogatorio del apelante

En *Méndez* v. *Delgado*, 83 D.P.R. 184 (1961), adoptamos formalmente en esta jurisdicción la doctrina sobre el ejercicio prematuro del auto de hábeas corpus al sostener su improcedencia para anular una sentencia cuya extinción no ha comenzado debido a que el peticionario se encuentra cumpliendo otra sentencia bajo la cual su prisión es legal.([5]) Adujimos que el propósito del auto es investigar la legalidad de la detención con miras a conceder bien la excarcelación, si la misma es ilegal, o la admisión de fianza, en casos apropiados. "El uso del auto no procede para lograr determinaciones judiciales que no han de afectar la custodia o detención del peticionario", señalamos entonces. Posteriormente, en *Coll Moya* v. *Alcaide, Cárcel Municipal*, 89 D.P.R. 225, 238 (1963), ratificamos la regla. La reexaminamos.

Idéntica regla se había establecido para la jurisdicción federal por el Tribunal Supremo de Estados Unidos en *McNally* v. *Hill*, 293 U.S. 131 (1934), que es la autoridad que se cita en *Méndez*. Después de trazar su genealogía en el derecho consuetudinario inglés y hacer referencia a su prosapia constitucional, se señala que conforme a su bagaje tradicional en el auto de hábeas corpus sólo se discute la disposición de la custodia del reo con miras a lograr su excarcelación inmediata. Se veda el uso del auto para obtener determinaciones judiciales sobre la validez de una convicción que aunque pueda resolverse a favor del peticionario no conlleva que se le ponga en libertad. Conclúyese que ni la historia del recurso ni el lenguaje de los estatutos que auto-

---

que éste se encontraba cumpliendo sentencias válidas. El tribunal prefirió continuar entendiendo en el asunto. T.E., págs. 7–9.

([5]) Desde los albores de nuestra jurisprudencia, en *Ex parte Rodríguez*, 3 D.P.R. 297 (1903), habíamos aplicado igual norma, pero es en *Méndez* v. *Delgado*, supra, donde por primera vez expusimos los fundamentos que la justificaban. En el mismo sentido nos pronunciamos en *Ex parte Rivera*, 4 D.P.R. 102 (1903); *Ex parte Nazario*, 8 D.P.R. 459 (1905); *Ex parte Teixidor*, 8 D.P.R. 534 (1905); y *Vázquez* v. *Rivera*, 70 D.P.R. 218, 225 (1949); cf. *Díaz* v. *Campos*, 81 D.P.R. 1009 (1960).

rizan su expedición indican el propósito de extender "su tradicional función" (a la pág. 138). (6) Oaks, *Habeas Corpus in the States—1776-1865*, 32 U. Chi. L. Rev. 243 (1965).

Advertimos que esta interpretación doctrinaria sobre el alcance del hábeas corpus en la esfera federal no es decisiva en nuestro propósito de elaborar la regla que estimemos más conveniente y deseable en Puerto Rico, aunque el trasfondo histórico en que exclusivamente se funda puede servirnos de punto de partida. Es preciso considerar además que la regla ha estado sometida a un proceso de erosión al confrontarse los tribunales federales con situaciones imprevistas al tiempo de la génesis del auto y su desarrollo ulterior hasta su incorporación en el derecho procesal federal. Nota, *The Expanding Use of Federal Habeas Corpus*, 61 Harv. L. Rev. 657 (1948). En *Martin* v. *Virginia*, 349 F.2d 781 (4th Cir. 1965), se autorizó el auto para investigar la legalidad de sentencias futuras que impedían la consideración de la concesión de libertad bajo palabra en el caso de la sentencia que se estaba cumpliendo. Véanse también, *Williams* v. *Peyton*, 372 F.2d 216 (4th Cir. 1967); Nota, *Habeas Corpus and the Prematurity Rule*, 66 Calif. L. Rev. 1164 (1966). Recientemente en *Rowe* v. *Peyton*, 383 F.2d 709 (4th Cir. 1967), se critica la regla de *McNally* como inefectiva y se rechaza como criterio las ideas sobre el contenido del auto prevalecientes en el Siglo Diecisiete, inapropiadas por su conceptualismo técnico para enfrentarse a los problemas actuales. Llégase tan lejos como para vaticinar que el Tribunal Su-

---

(6) Véanse, *Ex parte Hull*, 312 U.S. 546 (1941), en donde se distingue *McNally* v. *Hill*, supra; *Heflin* v. *United States*, 358 U.S. 415 (1959), especialmente la opinión concurrente del Juez Asociado Señor Stewart, a la pág. 421; y *Jones* v. *Cunningham*, 371 U.S. 236 (1963).

Se ha reconocido una excepción limitada a la regla cuando se revocan los efectos de una sentencia suspendida o los beneficios de la libertad bajo palabra debido a una convicción posterior. *Wilson* v. *Gray*, 345 F.2d 282 (9th Cir. 1965). Cf. *Watson* v. *Myers*, 250 F.Supp. 292 (E.D. Pa. 1966).

premo federal la descartará. (⁷) Cf. *Walker* v. *Wainwright*, 390 U.S. 335 (res. en marzo 11, 1968).

Otro tanto ocurre en las jurisdicciones estatales. Se observa una corriente definida a ampliar el ámbito del recurso para permitir que se utilice en la impugnación de sentencias cuyo cumplimiento no ha comenzado. *Commonwealth* v. *Myers*, 213 A.2d 613 (Pa. 1965); *State* v. *Burke*, 133 N.W.2d 753 (Wis. 1965); *State* v. *Tahash*, 139 N.W.2d 161 (Minn. 1965); *In re Estrada*, 408 P.2d 948 (Cal. 1966); *Ex parte Chapman*, 273 P.2d 817 (Cal. 1954); cf. *Simon* v. *Director of Patuxent Institution*, 201 A.2d 371 (Md. 1964). Véanse, *The Uncertain Rules of Timeliness in Petitions for the Writ of Habeas Corpus*, 11 Vill. L. Rev. 589 (1966); Nota, 52 Cornell L.Q. 149 (1966). En ocasiones, para ello se recurre a extender por ficción el significado del término detención. *The "Custody" Requirements for Habeas Corpus*, 26 Md. L. Rev. 79 (1966); Nota, Duke L.J. 1966: 588.

■ Meras razones históricas no deben interponerse ante la sentida necesidad de que se autorice la disponibilidad del hábeas corpus para cuestionar sentencias futuras. No puede escaparse al más tradicionalista que en la actualidad el recurso ha cobrado importancia excepcional como vehículo por excelencia para atacar colateralmente las sentencias ante el reconocimiento judicial de un conjunto de derechos del acusado protegidos constitucionalmente por el debido procedimiento de ley tanto en la etapa anterior como durante el proceso, y que en gran medida el concepto original de traslimitación de la jurisdicción por el tribunal sentenciador se ha expandido a límites insospechados. Las exigencias procesales demandan que se le reconozca plena virtualidad al auto

---

(⁷) Cuando se circuló esta opinión en 10 de mayo de 1968 se encontraba pendiente ante el Tribunal Supremo federal un recurso para revisar la decisión en *Rowe* v. *Peyton*, supra, 36 L.W. 3286. A esta fecha ya se emitió opinión mediante la cual se revoca la regla de *McNally* para las cortes federales. *Peyton* v. *Rowe*, 391 U.S. — (res. en mayo 17 de 1968), 36 L.W. 4462.

de hábeas corpus como un instrumento útil y apropiado dentro de los remedios post-convicción.[8] Como cuestión práctica la demora que se ocasionaría hasta que el confinado comience a extinguir la sentencia que impugna es perjudicial para ambas partes, tanto al Estado como al acusado, ya que en caso de decretarse un nuevo juicio, existe el señalado riesgo de la desaparición o extravío de la prueba competente, la inconstancia y debilidad de la memoria y el recuerdo de los testigos, y la posibilidad de la muerte del taquígrafo que participó en el acto del juicio que culminó en la convicción. Una pronta determinación de la validez de una sentencia es más germana con una más depurada y eficiente administración de justicia. Pecaríamos de iconólatras si por preservar el linaje del auto—único fundamento que se adujo al enunciar la doctrina de prematuridad—limitáramos su eficacia ante las exigencias modernas.[9]

La doctrina de prematuridad no se justifica en esta jurisdicción. La abandonamos. Cualquier expresión en contrario contenida en nuestras anteriores decisiones queda expresamente revocada.

■ 2—Establecido que el apelante podía instar el recurso para impugnar una sentencia que no había comenzado a extinguir, réstanos examinar el error señalado.

---

[8] La existencia desde 1967 de un procedimiento posterior a la sentencia, Regla 192.1 de las de Procedimiento Criminal, que es paralelo al remedio que en muchos casos puede lograrse mediante hábeas corpus, no detrae de la necesidad de reexaminar la doctrina de prematuridad. Véase, Ley Núm. 18 de 11 de abril de 1968 (Leyes, pág. 29) que enmendó el Art. 469 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 1741.

[9] Los problemas que surgen al margen de las sentencias consecutivas y concurrentes y los sistemas de libertad a prueba y bajo palabra, instrumentos eficaces dentro del propósito de rehabilitación del delincuente que eran desconocidos cuando se originó y desarrolló el auto de hábeas corpus, son un vivo ejemplo de la necesidad de adaptación a nuevas circunstancias de los recursos tradicionales. Para ello sólo se requiere un poco de flexibilidad en la interpretación.

. En los méritos se alega que no procedía castigar al apelante bajo el Art. 56 del Código Penal, 33 L.P.R.A. sec. 131, como delito subsiguiente, sino bajo el 152 correspondiente al delito de fuga, 33 L.P.R.A. sec. 509. Adúcese que este último contiene su propio agravante—la disposición taxativa al efecto de que la pena impuesta no será concurrente con ninguna otra—y no debe recurrirse al castigo previsto para los delitos subsiguientes. Nada hay que indique que el legislador intentó excluir con esta disposición la posibilidad de que el delito de fuga se castigara como subsiguiente.[10] No existe conflicto alguno entre ambas disposiciones.[11]

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de Mayagüez, en 22 de mayo de 1967.*

El Juez Presidente Señor Negrón Fernández no intervino. El Juez Asociado Señor Santana Becerra disintió en parte mediante opinión en la cual concurre el Juez Asociado Señor Hernández Matos.

—O—

Voto disidente en parte del Juez Asociado Señor Santana Becerra en el cual concurre el Juez Asociado Señor Hernández Matos

San Juan, Puerto Rico, 28 de junio de 1968

Disiento de aquella parte del fallo que sostiene la procedencia de la condena con carácter de subsiguiente.

El Art. 152 del Código Penal según fue originalmente adoptado, disponía que toda persona que se fugase de una

_____

[10] Esta disposición se adicionó por la Ley Núm. 9 de 29 de diciembre de 1950 (Leyes, pág. 389) y fue consecuencia directa de la evasión en masa de los confinados de la Penitenciaría Estatal ocurrida en octubre de 1950.

[11] Aclaramos, de paso, que no todas las infracciones al Art. 152 pueden ser castigadas como delito subsiguiente, pues la infracción puede cometerse mientras se está en prisión preventiva o se cumple una sentencia en trámite de apelación, casos en que no podría imputarse reincidencia.

prisión mientras estuviere cumpliendo condena sería castigada *por orden sumaria* del Tribunal competente con prisión por un término adicional mínimo de una vigésima parte o máximo de una quinta parte de la primitiva sentencia. La anterior disposición se adoptó coetáneamente con el Art. 56 del Código Penal referente a los delitos subsiguientes y que estatuye que el reo que habiendo sido convicto de algún delito castigado con pena de presidio cometiere cualquier delito, después de dicha convicción, será castigado de la manera que en dicho artículo se expresa.

En 1950—Ley Núm. 9 de 29 de diciembre—y con motivo de hechos por todos conocidos, se enmendó el Art. 152 del Código Penal disponiéndose entonces que toda persona bajo custodia legal que se fugare mientras estuviere en sumaria, o en trámite de apelación, o cumpliendo sentencia sería castigada *por orden sumaria* del Tribunal de Distrito de Puerto Rico (Tribunal Superior) con prisión entre uno y diez años en adición a la sentencia impuesta por el otro delito o a la que estuviere cumpliendo, y esta pena no sería concurrente con ninguna otra.

Por la Ley Núm. 447 de 14 de mayo de 1952 se enmendó nuevamente el Art. 152 para disponer que toda persona bajo custodia legal que se fugare mientras estuviere en prisión preventiva, o en trámite de apelación, o cumpliendo sentencia será castigada *por orden sumaria* del Tribunal de Distrito (Tribunal Superior) de la manera siguiente: (a) Si estuviere en prisión preventiva incurre en delito menos grave sujeto a un término de cárcel; (b) Si se trata del cumplimiento de la sentencia en un delito grave, incurre en delito grave; y (c) Si estuviere cumpliendo un delito menos grave incurre en delito menos grave sujeto a cárcel. Se le niega concurrencia a las sentencias dictadas de conformidad con lo anterior.

Históricamente la fuga bajo custodia legal se ha tratado como un procedimiento *sui generis*. Siempre se ha dispuesto

por el Legislador que se castigue *sumariamente* y por orden. Se le ha dado jurisdicción original al Tribunal Superior, de Distrito antes, para entender en esos casos aún cuando se trate de delito menos grave. Por la procedencia histórica y la forma en que ha dispuesto el Art. 152 según enmendado, en ausencia de una expresión legislativa afirmativamente en contrario, entiendo que las penas impuestas en estos procedimientos por fuga no dan lugar a la alegación de subsiguiente a tenor del Art. 56 del Código Penal.

Convengo con la representación legal del apelante que el Legislador dio a la fuga consecuencias especiales agravatorias al prohibir la concurrencia de penas, y dispondría que el apelante fuera sentenciado de nuevo por el delito de fuga conforme a las penas que indica el Art. 152 del Código Penal sin consideración a lo dispuesto en el Art. 56 de dicho Código.