# 2009 DTA 136

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL IV**

JOSÉ E. ORTIZ GARCIA
Recurrente

v.

ADMINISTRACIÓN DE CORRECCIÓN, Y OTROS
Recurridos

Núm. KLRA-2008-01687

San Juan, Puerto Rico, a 30 de septiembre de 2009

Panel integrado por su Presidente, el Juez Rivera Román,
y los Jueces Coll Martí y Vizcarrondo Irizarry

Rivera Román, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El señor José E. Ortiz García fue encontrado culpable de cometer dos faltas disciplinarias, conforme a las disposiciones del Reglamento de Procedimientos Disciplinarios para Confinados y Confinadas, y Participantes de Programas de Desvío y Comunitarios, 29 de junio de 2005, Reglamento Núm. 6994 (Reglamento de Procedimientos Núm. 6994). Además, se ordenó el cambio de custodia del señor Ortiz. El Comité de Clasificación y Tratamiento de la Administración de Corrección (Comité de Clasificación) evaluó el expediente del señor Ortiz y determinó que debía estar bajo custodia máxima.

El señor Ortiz recurre ante nos y alega que lo encontraron incurso en varias faltas disciplinarias utilizando un reglamento nulo.

Por entender que la Administración de Corrección actuó correctamente, se confirma su resolución. Veamos los hechos del caso.

### I

El señor Ortiz fue condenado a cumplir cadena perpetua por la comisión de un asesinato en primer grado, entre otros delitos, y está confinado en una institución correccional desde el año 1978. En julio de 2008, se le radicó una querella por cuatro violaciones a las Reglas de Seguridad de la Administración de Corrección.

El informe de querella en torno al incidente disciplinario refleja que el oficial Jorge L. Narváez García observó que el señor Ortiz llevaba un saco pequeño, le indicó que se detuviera y éste salió corriendo para evadirlo. El oficial Narváez lo detuvo y lo registró; el señor Ortiz derramó el contenido del saco dentro del cual se encontró unas medias, ropa interior y cuatro paquetes con envoltura de plástico que aparentaban contener sustancias controladas. La pieza fue ocupada y, posteriormente, se realizó una prueba de campo que arrojó un resultado positivo a marihuana.

La Administración de Corrección celebró una Vista Administrativa Disciplinaria en agosto del 2008. El Oficial Examinador, señor Axel Soto Rivera, determinó que el señor Ortiz incurrió en dos de las violaciones imputadas. Se ordenó la segregación disciplinaria del señor Ortiz hasta un máximo de 60 días por cada violación y la cancelación de todas las bonificaciones por buena conducta acumuladas por el señor Ortiz hasta el momento de los hechos. El señor Ortiz solicitó la reconsideración de la resolución, pero ésta fue denegada.

Paralelamente, el Comité de Clasificación atendió el caso y emitió una resolución mediante la cual reclasificó la custodia del señor Ortiz, de mínima a máxima; clasificó la segregación a la cual debía estar sometido y le solicitó a la Administración de Corrección que lo trasladara a otra institución penal.

El señor Ortiz apeló la resolución del Comité de Clasificación ante ese mismo organismo y alegó que se le aplicó un Reglamento incorrecto para cambiar su custodia. La apelación fue denegada y se mantuvo el acuerdo, pues se consideró que la evaluación inicial del Comité cumplió con la reglamentación vigente y aplicable.

A finales del 2008, el señor Ortiz presentó una solicitud de remedio administrativo en la División de Remedios Administrativos. En la solicitud de remedio también alegó que se le aplicó incorrectamente un

reglamento que no estaba vigente en el momento en que ocurrieron los hechos del caso, por lo que se cometió un error al aumentar su custodia. Solicitó su reclasificación según la reglamentación vigente en el momento de los hechos.

La División de Remedios Administrativos le contestó al señor Ortiz que su reclasificación a custodia máxima fue hecha conforme a la reglamentación vigente y aplicable, por lo que denegó su petición. El señor Ortiz le solicitó a la División de Remedios Administrativos la revisión de su determinación, pero ésta fue denegada. Una reconsideración presentada fue denegada, confirmándose así la respuesta inicial de la División.

Como resultado de lo anterior, el señor Ortiz presentó un recurso de revisión en el Tribunal de Apelaciones. Alegó que se le aplicó incorrectamente el Reglamento de Procedimientos, pues éste era nulo. Además, alegó que se le violó su derecho constitucional en contra de leyes *ex post facto* al aplicársele unos reglamentos que entraron en vigor luego de que se emitió su sentencia en el 1978. La Procuradora General presentó su alegato en oposición. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II
### 1. Las acciones disciplinarias y la reclasificación en la Administración de Corrección

Nuestra Constitución dispone de un mandato expreso al Estado Libre Asociado de Puerto Rico a reglamentar las instituciones penales para que sirvan sus propósitos de forma efectiva y a favorecer el tratamiento adecuado de los delincuentes para facilitar su rehabilitación moral y social. Art. VI, Sec. 19, Const. E.L.A., L.P.R.A., Tomo 1. De acuerdo con esta encomienda, se creó la Administración de Corrección con el propósito de estructurar la política pública en el área de la corrección; organizar los servicios de corrección para que la rehabilitación tenga un lugar prioritario entre los objetivos del Gobierno; y crear la reglamentación interna necesaria para formar los programas de diagnóstico, clasificación, tratamiento y rehabilitación de las personas que concurren el sistema de corrección. Artículo 5 de la Ley Orgánica de la Administración de Corrección, Ley 116 de 22 de julio de 1974, según enmendada, 4 L.P.R.A. sec. 1112(a), (b) y (c).

A tenor con las responsabilidades impuestas a la Administración de Corrección, ésta ha desarrollado varios reglamentos, entre los que se encuentran el Reglamento de Procedimientos Núm. 6994; el Manual de Reglas para Crear y Definir Funciones del Comité de Clasificación y Tratamiento en las Instituciones Penales, Reglamento Núm. 7334 del 10 de abril de 2007 (Manual de Reglas); y el Manual de Clasificación de Confinados, Reglamento Núm. 7295 del 14 de marzo de 2007 (Manual de Clasificación). [1]

El propósito del Reglamento de Procedimientos Núm. 6994 es establecer las normas y procedimientos que se seguirán en los asuntos de disciplina, y el aparato disciplinario que se encargará de implantarlas. Introducción, Reglamento de Procedimientos Núm. 6994, *supra*.

La Regla 6 del Reglamento de Procedimientos Núm. 6994, *supra*, define los actos con nivel de severidad I como:

"[A]ctos, o tentativa de actos prohibidos de naturaleza grave, tales como los tipificados en el Código Penal de Puerto Rico o leyes especiales. Incluye además, violaciones administrativas no cubiertas por disposición legal alguna, que por su propia naturaleza o magnitud constituyen un riesgo o a (sic) amenaza a la seguridad, la disciplina, o el ambiente institucional o violaciones a las condiciones de cualquier Programa de Desvío y Comunitario."

La Tabla IV del Reglamento de Procedimientos Núm. 6994, *supra*, establece las sanciones disciplinarias que se pueden imponer para las faltas de Nivel I. Entre éstas se encuentran la cancelación del 100% de las bonificaciones por buena conducta correspondiente al período de tiempo transcurrido entre el mes anterior a la

comisión del acto prohibido hasta la fecha de la emisión de la determinación final o resolución; la segregación disciplinaria hasta un máximo de 60 días por cada violación; y la recomendación para el traslado o aumento en el nivel de custodia.

Entre las tareas que debe llevar a cabo la Administración de Corrección se encuentra la determinación del nivel de custodia al cual será sometido el confinado. La Regla 15 (B) del Reglamento de Procedimientos Núm. 6994, *supra*, establece que en todos los casos de actos prohibidos de Nivel I, el Oficial Examinador de Vistas Disciplinarias está obligado a referir su determinación al Comité de Clasificación de la institución para que lleve a cabo la correspondiente evaluación de cambio en el nivel de custodia del confinado. Además, el inciso III,B,2,e de la Sección 7 del Manual de Clasificación, *supra*, dispone que se deben efectuar revisiones automáticas de clasificación cuando el confinado posee una convicción por una violación disciplinaria de Nivel I/Nivel II, según definidas por la Administración de Corrección.

El Comité de Clasificación tiene la función básica de:

"Wvaluar al confinado en términos de sus necesidades, capacidades, intereses, limitaciones y funcionamiento social y estructurarle un plan de tratamiento. El mismo se evaluará periódicamente para determinar si está respondiendo a las necesidades de éste. Así también determinará aquellos cambios necesarios para el logro de las metas rehabilitadoras y de protección social. Regla 1, Manual de Reglas, *supra*."

El Comité de Clasificación y Tratamiento es quien debe atender *toda situación relacionada al plan de tratamiento del confinado, incluyendo el tipo de custodia o cambio de custodia del confinado que ha sido sentenciado. Regla 4, Manual de Reglas, supra.*

La tarea de determinar el nivel de custodia de un confinado ha sido descrita por nuestro Tribunal Supremo de la siguiente manera:

"[L]a determinación administrativa relativa al nivel de custodia asignado a un confinado requiere que se realice un balance de intereses adecuado. Por una parte, estará el interés público de lograr la rehabilitación del confinado, así como mantener la seguridad institucional y general del resto de la población penal; de la otra, estará el interés particular del confinado de permanecer en un determinado nivel de custodia. Además, el momento de determinarse la procedencia de un cambio en el nivel de custodia, deberá considerarse una serie de factores subjetivos y objetivos, para cuya atención se requiere la pericia de la Administración de Corrección." *Cruz v. Administración*, 164 D.P.R. 341, 352 (2005).

Se ha determinado que "el interés público en la rehabilitación de la población penal y en la seguridad institucional debe prevalecer sobre el interés particular del confinado en permanecer en un nivel de custodia en específico o en determinada institución penal." *Cruz v. Administración, supra*, pág. 354. Además, las determinaciones administrativas sobre las clasificaciones de los confinados merecen especial deferencia. *López Leyro v. E.L.A.*, **2008 J.T.S. 29**, 173 D.P.R. ___ (2008). Además, una determinación formulada por el Comité de Clasificación y Tratamiento de la Administración de Corrección:

"Debe ser sostenida por el foro judicial, siempre que no sea arbitraria o caprichosa y esté fundamentada en evidencia sustancial. Es decir, siempre que la sea razonable, cumpla con el procedimiento establecido en las reglas y los manuales, y no altere los términos de la sentencia impuesta, el tribunal deberá confirmarla." *Cruz v. Administración, supra*, pág. 355.

## 2. El historial del Reglamento de Procedimientos Núm. 6994

El Reglamento de Procedimientos Núm. 6994 fue puesto en vigor el 29 de junio de 2005.

Aproximadamente tres años después, el 28 de febrero de 2008, el Tribunal de Primera-Instancia, Sala Superior de Utuado, emitió una orden en el caso *Edgardo Acevedo Bayón v. E.L.A.*, LPE-2007-0032, en la cual se declararon nulas las disposiciones del Reglamento de Procedimientos Núm. 6994 que violaban el debido proceso de ley del confinado por ser incongruentes con las disposiciones aplicables a procedimientos adjudicativos formales de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.).

Como resultado de la sentencia mencionada anteriormente, la Administración de Corrección emitió una orden administrativa, el 13 de marzo de 2009, en la cual informó su intención de poner en vigor nuevamente el Reglamento para los Procedimientos Disciplinarios y atemperarlo a las disposiciones de la L.P.A.U.

Posteriormente, el 16 de abril de 2009, la Sala Superior de Utuado del Tribunal de Primera Instancia emitió una sentencia declaratoria e interdicto permanente en el caso de *Marcelino Acevedo Bayón v. E.L.A.,* LMI-2007-0078, mediante la cual prohibió la aplicación del Reglamento de Procedimientos Núm. 6994 en todas las instituciones de la Administración de Corrección.

Sin embargo, la Administración de Corrección emitió otra orden administrativa, el 23 de junio de 2009, mediante la cual derogó la Orden Administrativa del 13 de marzo de 2009 y reestableció el Reglamento de Procedimientos Núm. 6994, pues la publicación de la Enmienda Núm. 1696 de 18 de mayo de 2009 atemperó sus disposiciones a las de la L.P.A.U., protegiendo así el debido proceso de ley de los confinados.

Recientemente entró en vigor la Enmienda al Reglamento de Procedimientos para Confinados y Participantes de Programas de Desvío y Comunitarios, Reglamento Núm. 7696 del 18 de mayo de 2009, para atemperarlo con las normas para los procedimientos adjudicativos contenidos en la L.P.A.U. Por lo tanto, el Reglamento de Procedimientos Núm. 6994 es la reglamentación vigente que dispone los procedimientos disciplinarios que aplican a los confinados.

### 3. La prohibición de leyes *ex post facto*

Nuestra Constitución prohíbe la aprobación y aplicación de leyes *ex post facto*. Art. II, Sec. 12, Const. E.L. A., L.P.R.A., Tomo 1. Es decir, en nuestro ordenamiento, las leyes penales que perjudiquen al acusado no se pueden aplicar de forma retroactiva. *Pueblo v. González*, 165 D.P.R. 675, 685-686 (2005). También se protege al ciudadano contra la aplicación o derogación retrospectiva de reglamentos administrativos u ordenanzas municipales que tengan consecuencias penales. *González v. E.L.A.*, 167 D.P.R. 400, 410 (2006).

El propósito de esta cláusula constitucional es garantizar que los estatutos provean a los ciudadanos una notificación adecuada de la conducta prohibida y las consecuencias penales que acarrea el llevar a cabo la conducta. *González v. E.L.A., supra*, pág. 408.

Existen cuatro tipos de estatutos que se consideran *ex post facto*, a saber: los que criminalizan y castigan un acto que al realizarse no era un delito; los que agravan un delito o lo hacen mayor de lo que era cuando se cometió; los que imponen una pena mayor que la fijada para el delito al momento en que se cometió; y los que alteran las reglas de evidencia para que exijan menos prueba que la requerida al momento que ocurrieron los hechos. *González v. E.L.A., supra*, pág. 408; *Fernández v. Rivera, Jefe del Presidio*, 70 D.P.R. 900, 903 (1950).

### III

Luego de evaluar toda la normativa pertinente, concluimos que la Administración de Corrección actuó correctamente al sancionar al señor Ortiz utilizando el Reglamento de Procedimientos Núm. 6994, pues ésta era la reglamentación vigente en el momento en que ocurrieron los hechos que generaron la querella y cuando se celebró la vista administrativa.

El Tribunal de Primera Instancia, Región Judicial de Utuado, declaró nulas las disposiciones referentes al procedimiento adjudicativo formal del Reglamento de Procedimientos Núm. 6994 en febrero de 2008. Sin embargo, la Orden Administrativa que puso en vigor el Reglamento para los Procedimientos Disciplinarios se emitió en marzo del 2009. Por otro lado, el incidente que generó la querella en contra del señor Ortiz ocurrió el 24 de julio de 2008. Esto quiere decir que en el momento en que ocurrió el incidente con el señor Ortiz, el Reglamento de Procedimientos Núm. 6994 todavía estaba vigente, por lo que era la reglamentación que debía aplicarse a la querella.

La orden de la Administración de Corrección que puso en vigor el Reglamento para los Procedimientos Disciplinarios se emitió luego de que se celebrara la vista administrativa en el caso del señor Ortiz. Por lo tanto, no se puede alegar la nulidad del Reglamento de Procedimientos Núm. 6994.

Por otro lado, conforme a las disposiciones del Reglamento de Procedimientos Núm. 6994, la Administración de Corrección actuó correctamente al reclasificar la custodia del señor Ortiz.

El inciso (B) de la Regla 15 del Reglamento de Procedimientos Núm. 6994, *supra*, establece que cuando se determina que el confinado ha cometido una falta de Nivel I, el Oficial Examinador de Vistas Disciplinarias debe referir el caso al Comité de Clasificación y Tratamiento de la institución penal para que se haga el correspondiente cambio de nivel de custodia del confinado.

En el presente caso, se celebró una vista disciplinaria y el Oficial Examinador de Vistas Disciplinarias determinó que el señor Ortiz incurrió en las faltas 122, sobre desobedecer una orden directa, y la falta 123, sobre posesión, introducción, uso, venta, o distribución de narcóticos, sustancias controladas o drogas sin receta médica o la posesión, fabricación o introducción de materiales asociados con el uso ilegal de sustancias controladas sin autorización médica. La Tabla I del Apéndice del Reglamento de Procedimientos Núm. 6994 identifica estas faltas como las de severidad de Nivel I.

La Tabla IV del Apéndice del Reglamento de Procedimientos Núm. 6994, *supra*, incluye todas las sanciones que se pueden imponer a un confinado que ha cometido faltas de Nivel I. Entre éstas, se encuentran la cancelación del 100% de las bonificaciones de buena conducta acumuladas al momento del acto correspondiente al período de tiempo transcurrido entre el mes anterior a la comisión del acto prohibido hasta la fecha de la emisión de la determinación final o resolución; la segregación disciplinaria hasta un máximo de 60 días por cada violación; y la recomendación para traslado o aumento en custodia.

En fin, el procedimiento administrativo seguido en contra del señor Ortiz se llevó a cabo correctamente. Además, las sanciones disciplinarias que se le impusieron corresponden a la severidad de las faltas que fueron probadas.

El cambio de custodia también fue correcto, de acuerdo a las disposiciones del Manual de Reglas y el historial del señor Ortiz en el sistema correccional.

La resolución del Comité de Clasificación y Tratamiento refleja que el señor Ortiz fue encontrado culpable en el 1978 por asesinato en primer grado, robo y portación de armas cargadas sin licencia. Por estos delitos fue sentenciado a cumplir cadena perpetua. El señor Ortiz se fugó en dos ocasiones de la institución penal y fue sentenciado por el delito de fuga en ambas ocasiones. También se le otorgó la Libertad Bajo Palabra en una ocasión y ésta fue revocada. En el momento en que se cambió la custodia del señor Ortiz, éste había cumplido 30 años, 9 meses y 16 días de reclusión. Estos factores, sumados a las faltas disciplinarias en que se encontró incurso recientemente, confirman que el Comité de Clasificación actuó correctamente al cambiar el nivel de custodia del señor Ortiz de mínima a máxima.

No encontramos justificación para apartarnos de la norma de deferencia que debemos guardar a las decisiones administrativas relativas a la clasificación de los confinados. En el balance de intereses, la rehabilitación de la población penal y la seguridad institucional tienen mayor peso que el interés del señor Ortiz de permanecer en una custodia de menor seguridad.

Tampoco procede el argumento del señor Ortiz en cuanto a la aplicación *ex post facto* del Reglamento de Procedimientos Núm. 6994 en su contra, porque el reglamento en cuestión no tiene consecuencias penales. Es decir, no se trata de una reglamentación penal que agrave algún delito cometido por el señor Ortiz o aumente la pena impuesta por alguno de esos delitos.

## IV

Por los fundamentos antes expuestos, se confirma la resolución de la Administración de Corrección.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones

### ESCOLIO 2009 DTA 136

**1.** Según el Registro de Reglamentos del Departamento de Estado, éstos son los Reglamentos del Departamento de Corrección que estaban vigentes el momento en que sucedieron los hechos de este caso y cuando se atendió la vista disciplinaria del señor Ortiz.