Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XI

| | | |
|---|---|---|
| EMMANUEL TORRES CRUZ<br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br>Recurrida | KLRA202300239 | *Revisión Judicial* procedente de la División de Remedios Administrativos<br><br>Solicitud Núm. B-621-23<br><br>Sobre:<br>Cambio de Custodia |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero

Adames Soto, Juez Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 15 de diciembre de 2023.

Comparece el señor Emmanuel Torres Cruz, quien se encuentra confinado, por derecho propio y en forma *pauperis,* (señor Torres Cruz o recurrente), a través de un *Recurso de revisión judicial.*[1] Solicita que revisemos la *Resolución* administrativa, denominada *Respuesta,* emitida por la División de Remedios Administrativos (la División), del Departamento de Corrección y Rehabilitación (DCR), el 2 de mayo de 2023. Mediante el referido dictamen, la División determinó que el recurrente no cumple al momento con los requisitos para participar en un programa de pases extendidos.

Contrario a lo decidido por la División, el recurrente nos plantea que, por virtud de la aprobación de una nueva reglamentación aprobada,

---

[1] La Juez Lebrón Nieves considera que estamos ante un recurso de revisión de decisión administrativa y no de revisión judicial.

que resulta aplicable a su caso, sí cualifica para beneficiarse de pases extendidos.

Según explicaremos, se equivoca el recurrente en su planteamiento, procede confirmar la determinación administrativa.

## I. Resumen del tracto procesal

El 12 de abril de 2023, el señor Torres Cruz presentó una *Solicitud de Remedio Administrativo* ante el DCR. En esencia, solicitó ser evaluado para el privilegio de pases iniciales, conforme se dispone en el Reglamento 7595, *Reglamento para la concesión de permisos a los miembros de la población correccional para salir o residir fuera de las instituciones correccionales del Estado Libre Asociado*, aprobado el 24 de octubre de 2008.

A raíz de lo cual, el 2 de mayo de 2023,[2] la División emitió *Respuesta,* informándole al recurrente que el reglamento vigente al momento de cometerse el delito por el cual fue sentenciado, era el Reglamento 4851, *Reglamento para la concesión de permisos a los confinados para salir o residir fuera de las instituciones penales del Estado Libre Asociado,* aprobado el 2 de diciembre de 1992. Ante ello, determinó que el señor Torres Cruz no cumplía con los requisitos establecidos en el Reglamento 4851 para el privilegio de pases iniciales, pues dicho reglamento exigía cuatro años ininterrumpidos en custodia mínima para poder ser considerado. En consonancia, la División le indicó al recurrente que cumpliría con los requisitos para beneficiarse de pases extendidos en septiembre de 2024.

Inconforme, el señor Torres Cruz presentó el Recurso de revisión judicial que está ante nuestra atención.

A raíz de ello, el 7 de junio de 2023, emitimos *Resolución* concediéndole al señor Torres Cruz el término de 10 días para

---

[2] Notificada el 12 de mayo de 2023.

perfeccionar su recurso, presentando lo siguiente: (1) un índice del recurso; (2) señalamientos de error; y (3) una discusión de los errores señalados. Además, le ordenamos que presentara la solicitud para litigar en forma *pauperis,* o en su defecto, que pagara los aranceles correspondientes para la presentación del recurso. Finalmente, le advertimos que, de incumplir con nuestra *Resolución,* se procedería a la desestimación de su recurso.

En respuesta, el 29 de junio de 2023, recibimos la *Solicitud y Declaración para que se exima de pago de arancel por razón de indigencia.*

Luego, el 19 de julio de 2023, emitimos *Resolución* concediéndole un término de 15 días a la Oficina del Procurador General de Puerto Rico para presentar su *Alegato.*

En efecto, el Procurador General compareció ante nosotros mediante *Escrito en Cumplimiento de Orden.*

Contando con el beneficio de las comparecencias de las partes, estamos en posición de resolver.

## II.  Exposición de Derecho

### A.  Revisión Judicial

El Art. 4.002 de la Ley Núm. 201-2003, Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, según enmendada, dispone que el Tribunal de Apelaciones revisará, como cuestión de derecho, las decisiones finales de los organismos y agencias administrativas que hayan sido tramitadas conforme con las disposiciones de la Ley Núm. 37-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 4 LPRA sec. 24 (u). En consonancia, la Regla 56 de nuestro Reglamento, provee para que este foro intermedio revise las decisiones, los reglamentos, las órdenes y las resoluciones finales dictadas por organismos o agencias

administrativas. Regla 56 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.56.

Es un principio reiterado que las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 893 (2008); *Matos v. Junta Examinadora,* 165 DPR 741, 754 (2005). Lo anterior se fundamenta en el conocimiento especializado y la experiencia *(expertise)* sobre la materia que su ley habilitadora le confiere. *Assoc. Ins. Agencies, Inc. v. Com. de Seguros*, 144 DPR 425, 436 (1997); *Misión Ind. PR v. J.P. y A.A.A.,* 142 DPR 656, 672-673 (1997). En virtud de lo cual, el ejercicio de revisión judicial debe deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Dpto. de Corrección y Rehabilitación,* 208 DPR 656, 674 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021).

En este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *Pérez López v. Departamento de Corrección y Rehabilitación,* supra, en la pág. 673; *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026-1027 (2020); *Rivera Concepción v. A. R. Pe.*, 152 DPR 116, 122 (2000). Esto significa que el tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS*, 205 DPR 268, 282 (2020); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de

derecho fueron correctas. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

La parte que impugna la decisión administrativa tiene que producir evidencia de tal magnitud que conmueva la conciencia y tranquilidad del juzgador de forma que este no pueda concluir que la decisión de la agencia fue justa porque simple y sencillamente la prueba que consta en el expediente no la justifica. Ello implica que "[s]i en la solicitud de revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor". *Domínguez v. Caguas Expressway Motors, Inc.*, supra, pág. 398; *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999).

### B. Reglamento 4851, Reglamento para la concesión de permisos a los confinados para salir o residir fuera de las instituciones penales del Estado Libre Asociado de Puerto Rico

El DCR aprobó el Reglamento 4851, *Reglamento para la concesión de permisos a los confinados para salir o residir fuera de las instituciones penales del Estado Libre Asociado de Puerto Rico* (Reglamento Núm. 4851), el 2 de diciembre de 1992, en virtud de los poderes que le otorgó la Ley Núm. 116 del 22 de julio de 1974,[3] según enmendada, conocida como *Ley Orgánica de la Administración de Corrección.* Revela el Artículo II del Reglamento Núm. 4851, en lo pertinente, que fue adoptado con el propósito de *conceder permisos a los confinados para salir de las Instituciones Penales o Centros de Tratamientos Públicos o Privados donde se encuentran recibiendo tratamiento en todo caso que se determine que la concesión de dichos permisos constituye una medida de tratamiento conveniente y necesaria para la rehabilitación del confinado mediante su readaptación progresiva de la comunidad.*

---

[3] Derogado por el Reglamento 7156, *Reglamento para la concesión de permisos a los confinados para salir fuera de las instituciones penales del Estado Libre Asociado de Puerto Rico.*

A esos efectos, el Artículo VI del Reglamento Núm. 4851 establece las Reglas de Aplicación General. Conforme a estas, se dispone que a los fines de conceder un permiso se hará una evaluación del historial delictivo del confinado, la naturaleza y circunstancias del delito por el cual cumple la sentencia, el término de ésta, el tiempo de sentencia ya cumplido, información sobre su conducta y condición física, emocional y mental. Artículo VI (E) del Reglamento Núm. 4851. Además, se considerará la experiencia en permisos anteriores, la opinión de las personas perjudicadas o relacionadas con el acto delictivo, opinión de los vecinos de la comunidad a visitarse y otras situaciones que hayan impactado a la ciudadanía como resultado del delito cometido. *Íd.*

En lo pertinente al recurso del epígrafe, el Artículo VI (4) del Reglamento Núm. 4851, indica que todo convicto bajo las disposiciones de la *Ley de Sentencias Determinadas,* a cumplir 99 años por asesinato en primer grado, cuyo mínimo de libertad bajo palabra es de 25 años naturales, **deberá cumplir 10 años antes de ser considerado para pase inicial.** Asimismo, **deberá estar disfrutando de custodia mínima ininterrumpida durante los últimos cuatro (4) años antes de ser considerado para un primer pase.** (Énfasis provisto).

## C. Reglamento 7595, *Reglamento para la concesión de permisos a los miembros de la población correccional para salir o residir fuera de las instituciones correccionales del Estado Libre Asociado de Puerto Rico*

Por otra parte, el 24 de octubre de 2008, el DCR aprobó el Reglamento 7595, *Reglamento para la concesión de permisos a los miembros de la población correccional para salir o residir fuera de las instituciones correccionales del Estado Libre Asociado* (Reglamento Núm. 7595), conforme la *Ley Orgánica de la Administración de Corrección.* Mediante este Reglamento, el DCR tuvo el propósito de conceder permisos a los confinados para salir de las instituciones correccionales o centros de tratamiento públicos o privados donde se encontraran

recibiendo tratamiento, en los casos en que se determinara que la concesión de dichos permisos constituiría una medida de tratamiento conveniente y necesaria para su rehabilitación mediante readaptación progresiva de la comunidad. Artículo II del Reglamento Núm. 7595.

En lo que aquí atañe, el Artículo VII del Reglamento Núm. 7595 **<u>excluye de la concesión de permiso sin custodia, a los confinados sentenciados por Ley de Armas</u>**, Ley Núm. 137 de 3 de junio de 2004, 25 LPRA sec. 455 *et seq.*, y confinados incluidos en la Ley Núm. 49 de 26 de mayo de 1995, [4]   4 LPRA sec. 1101 *et seq.*[5] (Énfasis y subrayado provistos).

### D. Orden Administrativa AC-2011-07

El 17 de marzo de 2011, el DCR aprobó la Orden Administrativa Núm. AC-2011-07 (OA, Núm. AC-2011-07). Mediante dicha Orden, el DCR estableció que toda evaluación para conceder o denegar un pase a algún miembro de la población correccional, **deberá realizarse basándose en el reglamento vigente al momento de cometerse los hechos que configuran el delito por el cual el confinado fue sentenciado**. Artículo I de la OA, Núm. AC-2011-07. (Énfasis provisto). La referida orden administrativa resultaría de aplicación a todos los empleados y funcionarios de la administración de corrección que intervengan en el proceso de la concesión de permisos o pases a los miembros de la población correccional, para salir o residir fuera de las instituciones correccionales. Artículo III de la OA, Núm. AC-2011-07.

### E. Leyes Ex post facto

Nuestra Constitución prohíbe la aplicación de leyes *ex post facto.* Art. II, Sec. 12, LPRA Tomo 1. Existen cuatro tipos de estatutos que son *ex post facto*, a saber, las leyes que: (1) criminalizan y castigan

---

[4] Estableció que **no serían elegibles** para participar en los programas de desvío o tratamiento y rehabilitación las personas sentenciadas por los siguientes delitos: **asesinato**, violación, incesto, sodomía o actos lascivos o impúdicos cuando la víctima fuera menor de catorce (14) años. (Énfasis nuestro).

[5] Ambas leyes se encuentran derogadas.

un acto que al ser realizado no era delito; (2) agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) alteran el castigo imponiendo una pena mayor que la fijada para el delito al momento de ser cometido, y (4) alteran las reglas de evidencia exigiendo menos prueba que la requerida por ley al momento de la comisión del delito para castigar al acusado o reduciendo el *quantum* de evidencia necesario para encontrarlo culpable. *Pueblo v. Ferrer Maldonado,* 201 DPR 974, 990 (2019); *González Fuentes v. E.L.A.,* 167 DPR 400, 408 (2006). *Pueblo en interés menor F.R.F.,* 133 DPR 172 (19939; *Fernández v. Rivera, Jefe del Presidio,* 70 DPR 900 (1949).

La protección contra leyes *ex post facto* solamente se activa cuando se pretende aplicar una ley penal de manera retroactiva. *González Fuentes v. E.L.A.,* supra. Se requiere también que la ley cuya aplicación retroactiva se cuestiona sea más perjudicial para el acusado que la vigente al momento de la comisión del acto. *Íd,* en la pág. 409. Es decir, para que un estatuto contravenga la cláusula contra leyes *ex post facto,* es necesario que éste sea de aplicación retroactiva y, además, que sea más oneroso para el imputado que el vigente a la fecha en que se cometió la ofensa. *Íd.*

De esta manera, al determinar si una ley penal es más onerosa que la vigente al momento de la comisión de los hechos es necesario examinar si, en comparación con el viejo estatuto, la nueva ley tiene el efecto de alargar el término de reclusión que habría de ser cumplido por el sujeto. A estos efectos, es *ex post facto* cualquier ley que elimina retroactivamente bonificaciones por buen comportamiento que estaban vigentes cuando el acusado realizó la conducta delictiva. *González Fuentes v. ELA,* supra, citando a *Lynce v. Mathis,* 519 US 433 (1997).

Además, la prohibición contra leyes *ex post facto* protege al ciudadano no solo contra la aplicación retroactiva de estatutos, sino

también contra la aplicación o derogación retrospectiva de reglamentos administrativos y ordenanzas municipales que acarrean consecuencias penales. *González Fuentes v. ELA*, supra, en la pág. 410, citando a *Ross v. Oregon,* 227 US 150 (1913). La razón para ello es que, mediante la aprobación de reglamentos y ordenanzas, las agencias administrativas y los municipios están ejerciendo poderes que les han sido válidamente delegados por la Asamblea Legislativa *Íd.*

## III. Aplicación del Derecho a los hechos

El *Recurso de revisión judicial* presentado por derecho propio por el señor Torres Cruz incumple con varios requisitos de forma de los contenidos en la Regla 59 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 59. Sin ser ni cercanamente exhaustivos, en dicho escrito no se hace indicación de disposiciones legales que sostengan la petición, tampoco se incluyeron señalamientos de errores, ni un índice del apéndice.

No obstante, el recurrente sí adjuntó en los anejos de su escrito, la determinación administrativa de la que recurre. De esta manera, al menos, nos permitió auscultar nuestra jurisdicción para atender la controversia en los méritos. En ánimos de evitar la aplicación automática e inflexible de los requisitos reglamentarios, y tomando en consideración la realidad particular de los reclusos, *Álamo Romero v. Administración de Corrección,* 175 DPR 314, 322 (2009), hemos decidido atender los méritos del asunto.

El señor Torres Cruz, adujo, en esencia, que la División incidió al denegar su solicitud de pases iniciales, de conformidad con el Reglamento Núm. 4851. Al respecto, argumentó que dicho reglamento se encuentra derogado, por lo cual, la División debió utilizar para la evaluación de su caso el Reglamento Núm. 7595, *Reglamento para la concesión de permisos a los miembros de la población correccional para*

*salir o residir fuera de las instituciones correccionales del Estado Libre Asociado,* el cual se encuentra vigente en estos momentos.

Ciertamente, el Reglamento Núm. 7595 es el que se encuentra vigente en este momento, sin embargo, no es el de aplicación al asunto traído ante nuestra consideración por el señor Torres Cruz. Nos explicamos.

Según detallamos en la exposición de derecho, el Reglamento Núm. 7595, aprobado el 24 de octubre de 2008, y que el recurrente nos solicita que apliquemos a su caso, **excluye de la concesión de permisos sin custodia a los confinados sentenciados por la Ley de Armas**, Ley Núm. 137 de 3 de junio de 2004, *supra*, y confinados incluidos en la Ley Núm. 49 de 26 de mayo de 1995, *supra*. Es decir, la aplicación del Reglamento que el recurrente aduce debería atender su caso, le sería perjudicial.

De una búsqueda en el sistema de *Consulta de Casos* del Poder Judicial, surge que el recurrente fue sentenciado en el 2007 por haber cometido los delitos dispuestos en el Artículo 106 del Código Penal del 2004 (Asesinato en primer grado), y el Artículo 5.05 de la Ley Núm. 404 del 2000, *Ley de Armas* (Portación y uso de armas blancas), por hechos ocurridos ese mismo año. Por ello, de aplicarse a la solicitud del recurrente el Reglamento Núm. 7595, aprobado luego de los hechos que dieron paso a su sentencia, **este no podría ser evaluado para la concesión de los permisos, por haber sido sentenciado por delitos que fueron expresamente excluidos por el reglamento**. De este modo, se equivoca el recurrente al solicitar ser evaluado bajo el Reglamento Núm. 7595, en tanto le perjudicaría, no le resulta beneficioso.

La OA Núm. AC-2011-07 dispone que toda evaluación para conceder o denegar un pase a algún miembro correccional, deberá realizarse basándose en el reglamento vigente **al momento de**

**cometerse los hechos que configuran el delito por el cual el confinado fue sentenciado.** Esto, debido a que es una norma reiterada que ninguna ley o reglamento puede ser aplicado de forma *ex post facto.*

Antes de aprobarse el Reglamento Núm. 7595 en el 2008, el Reglamento Núm. 4851 establecía el proceso y los requisitos para los permisos desde el 2 de diciembre de 1992. Posteriormente, este último fue derogado por el Reglamento 7156, *Derogación del Reglamento para la concesión de permisos a los confinados para salir fuera de las instituciones penales del Estado Libre Asociado de Puerto Rico,* aprobado el 1 de junio de 2006, el cual estableció que la agencia establecería reglamentación interna para establecer el asunto de los permisos. Sin embargo, el Reglamento Interno adoptado el 29 de agosto de 2006 por el DCR, fue declarado nulo mediante sentencia declaratoria emitida el 20 de diciembre de 2007 por el Tribunal de Primera Instancia, en el caso *Rivas Claudio v. Adm. de Corrección, K PE2007-1890.* Es decir, al momento de cometerse los hechos que dieron paso a la sentencia del señor Torres Cruz, no había un Reglamento vigente que estableciera los requisitos para conceder los permisos a los confinados, en vista de que el Reglamento interno fue declarado nulo.

Hecha la evaluación integral de lo hasta aquí expuesto, coincidimos con la interpretación emitida en la *Respuesta* del DCR, mediante la cual se estableció que el Reglamento Núm. 4851 es el aplicable a la solicitud del señor Torres Cruz. Según ya hemos explicado, contrario a la creencia del recurrente, el Reglamento Núm. 7595, actualmente vigente, le resulta más oneroso, en tanto no lo haría elegible para ser considerado a participar en un programa de pase extendido.

En tales circunstancias, el Reglamento Núm. 4851 dispone que *todo convicto a cumplir 99 años por asesinato en primer grado, cuyo mínimo de libertad* bajo palabra es de 25 años naturales, deberá cumplir

10 años antes de ser considerado para pase inicial. Reglamento Núm. 4851, supra. Asimismo, deberá estar disfrutando de custodia mínima ininterrumpida durante los últimos cuatro (4) años antes de ser considerados para un primer pase. *Íd.*

Del expediente ante nuestra consideración surge que el recurrente ha cumplido 3 años consecutivos en custodia mínima, de manera que, no cumple con el requisito de cuatro años ininterrumpidos en custodia mínima establecido en el Reglamento Núm. 4851, *supra.* En consecuencia, acertó la División en su *Respuesta,* al determinar que el señor Torres Cruz aún no cualifica para el pase inicial, debido a que los cuatro años ininterrumpidos en custodia mínima exigidos por el Reglamento Núm. 4851 se cumplen en septiembre de 2024, por lo que, procede confirmar el dictamen administrativo recurrido.

## IV.  Parte dispositiva

Por los fundamentos expuestos, *confirmamos* la determinación recurrida.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones