Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| EDWIN GARCÍA OJEDA | | *Revisión* procedente de la Junta de Libertad Bajo Palabra |
|---|---|---|
| Recurrente | | |
| v. | KLRA202500300 | Caso Núm.: 28788 |
| JUNTA DE LIBERTAD BAJO PALABRA | | Sobre: No Jurisdicción Ley Núm. 85-2024 |
| Recurrida | | |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2025.

Por razón de que la ley vigente actualmente excluye a los condenados por secuestro de disfrutar del privilegio, la Junta de Libertad Bajo Palabra (la "Junta") se declaró sin jurisdicción para evaluar a un confinado que todavía extingue su sentencia por dicho delito. Según explicamos en detalle a continuación, como la ley vigente al momento de los hechos tampoco le permitía ser elegible (pues cometió el delito de secuestro utilizando un arma de fuego), actuó correctamente la Junta, al no ser aplicable la protección constitucional contra leyes *ex post facto*.

I.

El Sr. Edwin García Ojeda (el "Recurrente") cumple una sentencia de 156 años de reclusión. En primer lugar, el 7 de abril de 1983, el Tribunal de Primera Instancia (el "TPI") sentenció al Recurrente a cumplir una pena de reclusión de 99 años por asesinato en primer grado. En segundo lugar, el Recurrente fue sentenciado a cumplir otros 57 años de reclusión por la comisión de otros delitos por los que se declaró culpable; comenzó a cumplir esta sentencia el 3 de mayo de 1997. Entre los delitos cuya pena de

reclusión extingue el Recurrente se encuentra el secuestro y la tentativa de secuestro.

Con fecha del 21 de junio de 2023, el Departamento de Corrección y Rehabilitación ("Corrección") emitió una *Notificación Sobre Cambio de Fecha* en la que expuso que, al aplicarse las bonificaciones correspondientes al periodo entre el 3 de diciembre de 2022 y el 3 de junio de 2023, el Recurrente efectivamente cumplía el mínimo de su sentencia de reclusión el 26 de septiembre de 2024. Por otro lado, el 30 de junio, Corrección formuló otra *Hoja Control sobre Liquidación de Sentencia* en la que se aplicó retroactivamente la Ley 85-2022. Como resultado, determinó que el nuevo mínimo de sentencia del Recurrente se cumplió el 16 de mayo de 2013.

El 19 de julio, se notificó el Acuerdo del Comité de Clasificación y se firmó el *Informe Breve para referir casos de Sentencia por delito grave y menos grave ante la Junta de Libertad Bajo Palabra.* Del aludido *Informe* se desprende que el Recurrente se encuentra en custodia mínima desde del 29 de agosto de 2013, posee ajustes adecuados; no tiene querellas en su contra; se benefició de las terapias de Aprendiendo a Vivir Sin Violencia; realizó labores en el área de la cocina con ajustes extraordinarios, por lo cual se recomendó una bonificación extraordinaria; posee cuarto año de escolaridad; tiene comportamiento adecuado; y se observó orientado a trabajar con su reinserción en la comunidad y con su plan de rehabilitación. Además, de acuerdo con dicho *Informe*, se presentó un plan de salida completo con vivienda, amiga consejera y oferta de trabajo.

El 26 de octubre, la vista de consideración ante la Junta de Libertad Bajo Palabra (la "Junta") fue suspendida para completar la información del Recurrente. Subsiguientemente, el 7 de noviembre, Corrección remitió a la Junta otro *Informe Breve de Libertad Bajo*

*Palabra.* Asimismo, el 7 de febrero de 2024, Corrección cursó a la Junta una certificación actualizada.

El 8 de febrero, Corrección emitió un *Informe de Evaluación Psicológica.* Según consta en este *Informe*, el único factor de riesgo del Recurrente es que su adaptación social podría verse limitada por los años de confinamiento.[1] Subsecuentemente, el 16 de febrero, se realizó otro *Informe de Libertad Bajo Palabra* actualizado, del cual se desprenden hallazgos similares en cuanto al Recurrente: buen ajuste institucional, comportamiento adecuado, ausencia de querellas y concentrado en la reinserción a la comunidad y su rehabilitación. Igualmente, el Recurrente presentó un plan de salida completo con una oferta de trabajo, residencia y amiga consejera.

El 7 de marzo, la vista de consideración ante la Junta fue suspendida. Asimismo, el 28 de junio, la Junta suspendió la vista de consideración debido a que el Recurrente se encontraba en cuarentena debido a un brote de COVID-19 en la Institución Guayama 500.

Subsecuentemente, la vista a celebrarse el 20 de noviembre también fue nuevamente suspendida. El fundamento de la Junta para la suspensión es que no pudo corroborar su jurisdicción debido a que el Recurrente cumple sentencia por delitos de secuestro y tentativa de secuestro. Estos delitos, entre otros, fueron excluidos de la jurisdicción de la Junta, mediante la Ley Núm. 85 de 28 de mayo de 2024 (la "Ley 85-2024"). De acuerdo con el *Informe del Oficial Examinador,* emitido el 20 de diciembre, era "necesario contar con una liquidación de sentencia actualizada y/o (sic) certificación de fecha de cumplimiento de los delitos excluidos (secuestro y tentativa de secuestro) donde se evidencie la fecha en que el

---

[1] Véase, *Informe de Evaluación Psicológica,* Apéndice VIII del recurso de revisión judicial, pág. 37.

peticionario cumplió o cumplirá la sentencia por dichos delitos".[2] Una vez recibida la información, la Junta evaluaría su jurisdicción y, de estimarlo procedente, citaría al Recurrente.

El 26 de diciembre, notificada el 21 de enero de 2025, la Junta emitió una *Resolución* en la que indicó que no pudo corroborar su jurisdicción debido a que en el expediente no obraba una liquidación de sentencia actualizada de conformidad con la Ley 85-2024. Puntualizó que "los delitos de secuestro y tentativa de secuestro están excluidos de la jurisdicción de la Junta según la Ley Núm. 85-2024, por lo cual es necesario contar con una liquidación de sentencia actualizada y/o (sic) una certificación de fecha de cumplimiento de los delitos excluidos (secuestro y tentativa de secuestro)" que evidenciara la fecha en la que el Recurrente cumplió o cumplirá la sentencia por dichos delitos.[3] Recibida dicha información y corroborada su jurisdicción, la Junta podría citar al Recurrente.

El 17 de marzo, la Junta emitió un *Informe de Oficial Examinador* en el cual formuló la siguiente determinación de hechos:

> 1. El peticionario se encuentra recluido en la institución correccional Guayama 500, cumpliendo una sentencia de ciento cincuenta y seis (156) años por asesinato en primer grado, infracción a la Ley de Armas (53 casos), recibo y transportación de bienes apropiados ilegalmente, robo (25 casos), tentativa de robo, **secuestro (2 casos), tentativa de secuestro,** agresión agravada, restricción a la libertad agravada, apropiación ilegal agravada (4 casos), y fuga. (Énfasis en el original).[4]

La Oficial Examinadora concluyó que el Recurrente fue sentenciado por delitos que están excluidos de la jurisdicción de la Junta, conforme a la Ley 85-2024 (secuestro y su tentativa). Al no

---

[2] Véase, *Informe del Oficial Examinador*, Apéndice XVI del recurso de revisión judicial, pág. 82.

[3] Véase, *Resolución*, Apéndice XVII del recurso de revisión judicial, pág. 85.

[4] Véase, *Informe del Oficial Examinador*, Apéndice XVIII del recurso de revisión judicial, pág. 88.

haber cumplido la totalidad de la sentencia por los delitos aludidos, determinó que la Junta carecía de jurisdicción para atender el caso.

El 20 de marzo, notificada el 4 de abril, la Junta emitió una *Resolución* en la que acogió el Informe del Oficial Examinador y determinó que carecía de jurisdicción para considerar el caso del Recurrente, debido a que la Ley 85-2024 excluye de la jurisdicción de la Junta los delitos de secuestro y su tentativa. Ordenó que una vez el Recurrente cumpliera la totalidad de la sentencia por los delitos antes mencionados, Corrección debería referir el caso nuevamente a la Junta.

No conteste con el resultado, el 11 de abril, el Recurrente presentó una *Moción de Reconsideración de No Jurisdicción (Ley Núm. 85-2024) para la Concesión de Libertad Bajo Palabra.* En síntesis, alegó que, al momento de ser sentenciado estaba vigente el Código Penal de 1974, el cual establecía que toda persona sentenciada por un delito grave, con posterioridad a la vigencia de la Ley Núm. 100 de 4 de junio de 1980, Ley de Sentencias Determinadas, tenía derecho a cualificar para libertad bajo palabra al cumplir el 75% de la sentencia impuesta. Por consiguiente, afirmó que al ser sentenciado tenía derecho a ser considerado para el privilegio al cumplir el 75% de su sentencia. Planteó que la aplicación retroactiva de la Ley 85-2024 a las sentencias de secuestro y tentativa de secuestro infringe su derecho a un debido proceso de ley y la prohibición constitucional en cuanto a leyes *ex post facto*.

El 23 de abril, notificada el 25 de abril, la Junta emitió una *Resolución y Orden* que declaró *Sin Lugar* la solicitud de reconsideración del Recurrente.

En desacuerdo, el 27 de mayo de 2025, el Recurrente interpuso el recurso de revisión judicial de referencia; formuló el siguiente señalamiento de error:

Erró y abusó de su discreción la JLBP al declararse sin jurisdicción para considerar la recurrente para el privilegio al aplicar de forma retroactiva la Ley 85 de 2024 a las sentencias de secuestro y tentativa de secuestro, cuando su aplicación resulta en la clara violación al principio constitucional en contra de la aplicación de las leyes *ex post facto*, al debido proceso de ley y al derecho a la rehabilitación del recurrente.

El 30 de mayo, le concedimos un término hasta el 26 de junio a la Junta para presentar su alegato, conforme a lo dispuesto en la Regla 63 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 63. El 26 de junio, la Junta, por conducto de la Oficina del Procurador General, presentó un *Escrito en Cumplimiento de Resolución.* Resolvemos.

II.

El Artículo 4.002 de la Ley Núm. 201 de 22 de agosto de 2003, Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (la Ley 201-2003), 4 LPRA sec. 24u, dispone que el Tribunal de Apelaciones tendrá jurisdicción para revisar "como cuestión de derecho [...] las decisiones finales de los organismos y agencias administrativas". De igual modo, el Artículo 4.006 de la Ley 201-2003, 4 LPRA sec. 24y, establece la revisión judicial "de las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas".

Por su parte, en lo atinente al alcance de la revisión judicial de las determinaciones de las agencias administrativas, la Sección 4.5 de la Ley Núm. 38-2017 ("LPAU"), 3 LPRA sec. 9375, establece lo siguiente:

El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.

Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.

Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.

La evidencia sustancial se define como la "prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 127-128 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018), *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953). A su vez, se desprende de la sección precitada que el expediente administrativo constituye la base exclusiva para la decisión de la agencia en un procedimiento adjudicativo, así como para la subsiguiente revisión judicial. Véase, además, Sección 3.18 de la LPAU, 3 LPRA sec. 9658; *Graciani Rodríguez*, 202 DPR a la pág. 128.

III.

La Ley Núm. 118 de 22 de julio de 1974, según enmendada, conocida como Ley Orgánica de la Junta de Libertad Bajo Palabra (la Ley Núm. 118), 4 LPRA sec. 1501 *et. seq.*, reglamenta el sistema de libertad bajo palabra en nuestra jurisdicción. El Artículo 3 de la referida ley, 4 LPRA sec. 1503, le concede facultad a la Junta para decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico que sea elegible para este privilegio conforme las disposiciones y limitaciones del propio estatuto. El sistema de libertad bajo palabra permite que una persona sentenciada a un término de cárcel cumpla la última parte de su sentencia fuera de la institución penal, sujeto al cumplimiento de las condiciones impuestas para conceder la libertad bajo palabra. *Íd.* Véase, además, *Maldonado Elías v. González Rivera*, 118 DPR 260, 275 (1987).

La Ley Núm. 118 ha sido enmendada en numerosas ocasiones. En lo pertinente al recurso que atendemos, mediante la Ley Núm. 33 de 27 de julio de 1993 (la "Ley Núm. 33"), se enmendaron los Artículos 2 y 3 de la Ley Núm. 118 **para excluir de los beneficios de sentencia suspendida y libertad bajo palabra a**

**toda persona que utilice o intente utilizar un arma de fuego para cometer un delito grave o su tentativa**. En específico, el Artículo 3 de la Ley 118 se enmendó para que indicara lo siguiente: "[e]n los casos en que se determine que la persona utilizó o intentó utilizar un arma de fuego en la comisión de un delito grave o su tentativa, no se concederá el beneficio de libertad bajo palabra". De acuerdo con la Exposición de Motivos de la Ley Núm. 33, esta fue promulgada por la siguiente razón:

> Dado el peligro que representa para nuestra sociedad el que las personas que utilizan o intentan utilizar un arma de fuego en la comisión de un delito grave o su tentativa estén en la libre comunidad antes de que cumplan el término de reclusión que se les imponga, esta ley excluye del beneficio de la sentencia suspendida y de la libertad bajo palabra a dichas personas.

Más recientemente, mediante la Ley 85-2022, la Asamblea Legislativa estableció nuevos términos para que los confinados puedan ser considerados ante la Junta. De acuerdo con la Exposición de Motivos, se pretendió "establecer una manera justa, retributiva y rehabilitadora, que le permita a aquella persona convicta por varios delitos el poder ser considerada para libertad bajo palabra al cumplir con los términos de la sentencia más onerosa relacionada directamente con alguno de los delitos por los cuales fue encontrado culpable". Además de enmendar la Ley Núm. 118, se enmendó el Artículo 308 del Código Penal de Puerto Rico, 33 LPRA sec. 5416. Por otro lado, la Ley 85-2022 decretó que su aplicación sería retroactiva "independientemente del Código Penal o Ley Penal Especial vigente al momento de los hechos delictivos, siempre y cuando resulte favorable para la persona condenada". Sec. 3, Ley 85-2022.

No obstante, la Asamblea Legislativa aprobó la Ley 85-2024, para enmendar la Ley Núm. 118 y el Artículo 308 del Código Penal, *supra*, con el siguiente propósito:

[...] reafirmar que las personas convictas por los delitos de agresión sexual en todas sus modalidades, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, **secuestro**, secuestro agravado y pornografía infantil, **incluyendo sus tentativas**, **no podrán beneficiarse de privilegio de libertad bajo palabra** y otras consideraciones, **indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012**. **Además, esta iniciativa aclara que la Ley 85-2022 no aplicará retroactivamente a las personas convictas por estas actuaciones delictivas y dispone que el referido estatuto no surtirá efecto en el cálculo de su sentencia**. Exposición de Motivos de la Ley 85-2024. (Énfasis provisto).

Consecuentemente, actualmente, el Artículo 3 de la Ley Núm. 118, establece como sigue:

Artículo 3.-Autoridad, Poderes y Deberes de la Junta

La Junta de Libertad Bajo Palabra tendrá la siguiente autoridad, poderes y deberes:
[...]
(a) La sentencia que esté cumpliendo no sea por ...

De igual forma, las personas convictas por los delitos de agresión sexual en todas sus modalidades, **incluyendo la tentativa**, violación, actos lascivos, sodomía, incesto, **secuestro**, secuestro agravado y pornografía infantil **no podrán beneficiarse del privilegio de libertad bajo palabra, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia, incluyendo los códigos penales de 1974, 2004, y 2012**. (Énfasis provisto).
[...]

En conexión, la Sección 3 de Ley 85-2024 estableció una cláusula de exclusión de jurisdicción de la Junta. Además, dispuso que la Ley 85-2022 no aplicará retroactivamente a las personas convictas por los delitos indicados, ni surtirá efecto en el cómputo de sentencias de las personas convictas por esos delitos:

Sección 3.-Cláusula de Exclusión de Jurisdicción de la Junta de Libertad Bajo Palabra. **La Junta no tendrá jurisdicción** para atender los casos de las personas convictas **por los delitos** de agresión sexual **en todas sus modalidades**, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, **secuestro**, secuestro agravado y pornografía infanti1, incluyendo sus tentativas, **no podrán beneficiarse del privilegio de libertad bajo palabra, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia,**

**incluyendo los Códigos Penales de 1974, 2004 y 2012**.

**La Ley 85-2022 no aplicará retroactivamente a las personas convictas por estas actuaciones delictivas**, conforme a la clara intención de la Decimonovena Asamblea Legislativa de no extender este privilegio a los ofensores de la ley descritos en el párrafo anterior.

**La Ley 85-2022 no surtirá efecto en el cálculo de la sentencia** de las personas convictas por los delitos de agresión sexual en todas sus modalidades, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012.

Los participantes que ya estén disfrutando del privilegio de libertad bajo palabra por la comisión de los delitos dispuestos en esta Ley y que sean revocados con posterioridad a su aprobación, no se les concederá nuevamente este privilegio.

Las personas que al momento de la aprobación de esta Ley estén referidas bajo la consideración de la Junta de Libertad Bajo Palabra sin que haya una determinación final, no cualificarán para este privilegio, indistintamente de la etapa procesal en que se encuentre la referida solicitud. (Énfasis provisto).

IV.

El Artículo II, Sec. 12, de la Constitución del Estado Libre Asociado de Puerto Rico prohíbe la aprobación de leyes *ex post facto*. Const. PR, Art. II, Sec. 12, 1 LPRA. De igual modo, la Constitución de los Estados Unidos de América contiene una cláusula semejante a la nuestra. Const. EE. UU., Art. I, Sec. 10, Cl. 1. Mediante la protección constitucional contra leyes *ex post facto* se le prohíbe a la Asamblea Legislativa criminalizar conducta de manera retroactiva. *Gotay Flores v. Adm. de Corrección*, 180 DPR 703, 705 (2011), citando a L. E. Chiesa Aponte, *Derecho Penal Sustantivo*, Publicaciones JTS, 2007, pág. 16. Esta protección constitucional tiene como propósito garantizar que "los estatutos provean al ciudadano una notificación adecuada (*fair warning*) de la conducta prohibida y las consecuencias penales que acarrea realizar dicha

conducta". *Pueblo v. Ferrer Maldonado*, 201 DPR 974, 1004, citando a *González v. E.L.A.*, 167 DPR 400, 408 (2006). Además, pretende evitar que el Estado implante medidas punitivas arbitraria o vengativamente. *Íd.*

A tales efectos, la prohibición constitucional contra leyes *ex post facto* se activa cuando un estatuto: "(i) tiene vigencia posterior a los hechos delictivos imputados o cometidos, y (ii) deja al afectado en una situación desfavorable o perjudicial, en relación con el estado de derecho vigente en el momento de la comisión de los hechos delictivos". *Ferrer Maldonado*, 201 DPR a la pág. 1005, citando a L.E. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1992, Vol. II, pág. 549.

Son cuatro (4) los tipos de estatutos que se consideran *ex post facto*: (1) aquellas leyes que criminalizan y castigan un acto que, al ser realizado, no era delito; (2) las que agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) las que alteran el castigo imponiendo una pena mayor que la fijada para el delito al momento de ser cometido, y (4) las que alteran las reglas de evidencia, exigiendo menos prueba que la requerida por la ley al momento de la comisión del delito para castigar al acusado o reducir el quantum de evidencia necesario para encontrarlo culpable.[5] *Gotay Flores v. Adm. de Corrección*, 180 DPR 703, 705-706 (2011), citando a *González, ante*; *Pueblo en interés menor F.R.F.*, 133 DPR 172, 180 (1993); *Fernández v. Rivera, Jefe del Presidio*, 70 DPR 900, 903 (1949).

Por lo general, la protección constitucional que prohíbe leyes *ex post facto* no se extiende a actos judiciales, estatutos de naturaleza civil, ordenes administrativas, declaraciones de política

---

[5] Estos cuatro tipos de leyes fueron delimitadas originalmente por la Corte Suprema de los Estados Unidos en *Calder v. Bull*, 3 Dall. 386, 1 L. Ed. 648 (1798), y acogidos por nuestro Tribunal Supremo en *Fernández*, 70 DPR a la pág. 903.

pública, ni reglas interpretativas o de carácter procesal. *Gotay Flores*, 180 DPR a la pág. 706, citando a *González*, 167 DPR a las págs. 409–410. Véase, además, *Pueblo v. Candelario*, 166 DPR 118 (2005). A su vez, en el campo administrativo, esta protección constitucional aplica únicamente cuando la reglamentación administrativa acarrea consecuencias penales. *Íd.*, citando a *González*, 167 DPR a la pág. 410; *Ross v. Oregon*, 227 US 150, 162-163 (1913); C.f. *Bailey v. Gardening*, 940 F.2d 1150, 1157 (1991).

Así pues, en lo concerniente a la tercera categoría de leyes *ex post facto*, entiéndase, aquellas que alteran el castigo imponiendo una pena mayor que la fijada para el delito al momento de ser cometido, la consecuencia es que se prohíbe la aplicación retroactiva de leyes que agravan la pena o las consecuencias penales de un acto con posterioridad a su comisión. Véase, E. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1993, Vol. II, sec. 19.1, pág. 553.

Resaltamos que esta protección constitucional puede infringirse cuando una ley altera gracias penales concedidas por merced legislativa, como sucede con los "privilegios" que, aunque no forman parte integral de una sentencia constituyen un factor determinante del tiempo de reclusión. *Weaver v. Graham*, 450 US 24, 32 (1981). Entre estos últimos se encuentran, por ejemplo, la disponibilidad de la sentencia suspendida y la libertad bajo palabra, pues ello puede afectar el tiempo de prisión que efectivamente cumpla la persona sentenciada. *Fernández v. Rivera*, 70 DPR a la pág. 904*; Weaver, supra*; *Warden v. Marrero*, 417 US 653, 663 (1974). También es *ex post facto* cualquier ley que elimina retroactivamente bonificaciones por buen comportamiento que estaban vigentes cuando el acusado realizó la conducta delictiva, *González*, 167 DPR a la pág. 409:

Como corolario de lo anterior, **resulta incompatible con la protección contra leyes *ex post facto* aplicar retroactivamente una ley que elimina a cierto grupo de convictos la posibilidad de ser elegibles para la concesión de libertad bajo palabra** o bajo supervisión electrónica. *U.S. v. Paskow,* 11 F.3d 873 (9no Cir. 1993). Véase, además, I LaFave's, S*ubstantive Criminal Law,* 2d Sec. 2.4 (2003). **Ello se debe a que la eliminación retroactiva de esos beneficios tiene el potencial de alargar el término que el convicto habrá de cumplir en reclusión**. (Énfasis provisto).

V.

Como vemos, en nuestro ordenamiento penal, opera el axioma básico de que la ley aplicable a unos hechos delictivos es aquella vigente al tiempo de cometerse el delito. *Pueblo v. González,* 165 DPR 675, 684 (2005), citando a *Pueblo v. Rexach Benítez,* 130 DPR 273, 301 (1992). No obstante, nuestro ordenamiento penal reconoce el principio de favorabilidad como excepción a la aplicación prospectiva de las leyes penales. *Íd.*

Esencialmente, el principio de favorabilidad establece que cualquier acusado tiene derecho a recibir el beneficio provisto por una ley posterior, siempre y cuando ello resulte más favorable que lo dispuesto en la ley vigente al momento de la comisión de los hechos delictivos, sujeto a que, al aprobarse la nueva ley, no se haya dispuesto una cláusula de reserva. Es decir, el principio de favorabilidad "ordena la aplicación retroactiva de leyes penales más favorables, lo que, a su vez, implica aplicar una ley cuya vigencia es posterior al acto u omisión realizado". *González,* 165 DPR a la pág. 685.

En lo pertinente al caso de referencia, el Artículo 4 del Código Penal de 1974, 33 LPRA sec. 3004, incluía el principio de favorabilidad y disponía lo siguiente:

Art. 4 Aplicación temporal de la Ley Penal.
Las leyes penales no tienen efecto retroactivo, salvo en cuanto favorezcan a la persona imputada de delito.

Si la ley vigente al tiempo de cometerse el delito fuere distinta de la que exista al imponerse la sentencia, se aplicará siempre la más benigna.

Si durante la condena se aprobare una ley más benigna en cuanto a la pena o al modo de ejecución la misma se limitará a lo establecido por esa ley.

En los casos de la presente sección los efectos de la nueva ley operarán de pleno derecho.

Ahora bien, destacamos que a diferencia de la prohibición de leyes *ex post facto*, el principio de favorabilidad no tiene rango constitucional. En *González*, 165 DPR a la pág. 686, se consignó lo siguiente:

[…] la aplicación retroactiva de las leyes penales que favorezcan al acusado [queda] dentro de la prerrogativa total del legislador. Es por ello que al principio de favorabilidad corresponde a un acto de gracia legislativa cuyo origen es puramente estatutario. Conforme a lo anterior, el legislador tiene la potestad para establecer excepciones al principio de favorabilidad… **[d]icho de otra manera, un acusado no tiene un derecho constitucional a la aplicación retroactiva de leyes penales más favorables**. (Énfasis en el original).

Por consiguiente, la Asamblea Legislativa posee discreción para aplicar prospectiva o retroactivamente una nueva ley que sea beneficiosa para un acusado. Así pues, puede legislar para limitar el principio de favorabilidad, toda vez que no es absoluto. "[E]n nuestra jurisdicción, la aprobación de cláusulas de reserva opera como una limitación al principio de favorabilidad; principio que, al carecer de rango constitucional, está dentro de la prerrogativa absoluta del legislador." *González*, 165 DPR a la pág. 702. (Énfasis en el original suprimido).

VI.

En este caso, no hay duda de que la ley vigente excluye al Recurrente de ser evaluado por la Junta mientras no haya extinguido la condena que cumple por el delito de secuestro. La aplicación de esta reciente legislación ciertamente generaría un problema constitucional si la ley vigente al momento de los hechos no hubiese excluido al Recurrente de ser considerado en esta etapa para libertad bajo palabra. No obstante, dicha ley igualmente

excluye al Recurrente, pues este utilizó un arma de fuego para cometer el delito de secuestro. Veamos.

Del récord surge que, el 18 de enero de 1997, el Recurrente cometió el delito de secuestro utilizando un arma de fuego. Subsiguientemente, se declaró culpable de ese y varios otros delitos violentos, y el 3 de mayo de 1997 comenzó a extinguir la sentencia. A su vez, al momento de cometer el delito de secuestro, el estado de derecho a raíz de la enmienda a la Ley Núm. 118 introducida por la Ley Núm. 33, **era que las personas que utilizaron o intentaron utilizar un arma de fuego para la comisión de delitos graves, incluido el secuestro, estaban excluidas del beneficio de la libertad bajo palabra.** Es decir, que estaban excluidas tajantemente de la jurisdicción de la Junta.

Por consiguiente, en este caso particular, la aplicación de la Ley 85-2024 no infringe la prohibición contra la aplicación de leyes *ex post facto*, debido a que, al momento de la comisión de los hechos, el estado de derecho de todas maneras excluía a los convictos por los delitos cometidos con armas de fuego de ser considerados para el beneficio de libertad bajo palabra. Es decir, esta legislación de modo alguno agravó la situación del Recurrente en comparación con el derecho vigente al momento de los hechos, que es el único momento pertinente a los fines del análisis bajo la cláusula constitucional contra las leyes *ex post facto. González v. E.L.A.*, 167 DPR 400 (2006).

Por otra parte, la cláusula de reserva contenida en la Ley 85-2024 no infringe el principio de favorabilidad. Mediante dicha cláusula, la Asamblea Legislativa reafirmó su objetivo de eliminar, para ciertos delitos, los beneficios que introdujo la Ley 85-2022. Adviértase que, en cuanto al principio de favorabilidad se refiere, la Asamblea Legislativa puede válidamente limitar la aplicación de

legislación que de otra manera resultaría más favorable. *González*, 167 DPR a la pág. 408.

En fin, la determinación recurrida es correcta en derecho, pues ni la ley actual, ni la ley vigente al momento de cometer el delito de secuestro, permitía que el Recurrente fuera evaluado para participar del programa de libertad bajo palabra mientras no haya cumplido la sentencia por el delito de secuestro.

VII.

Por los fundamentos que anteceden, se confirma la *Resolución* recurrida.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones